# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2009AP3073-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |             Plaintiff-Respondent, |
| |      v. |
| | Michael R. Griep, |
| |             Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 353 Wis. 2d 252, 845 N.W.2d 24
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 25

| | |
|---|---|
| OPINION FILED: | April 23, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 12, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Winnebago |
|   JUDGE: | Thomas J. Gritton |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, C.J., BRADLEY, J., concur. (Opinion Filed) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | PROSSER, J., withdrew from participation. |

ATTORNEYS:

For the defendant-appellant-petitioner, the cause was argued by *Tricia J. Bushnell*, Kansas City, MO. The briefs were filed by *Tricia J. Bushnell*.

For the plaintiff-respondent, the cause was argued by *Michael C. Sanders*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by *Keith Findley* on behalf of The Innocence Network, Madison.

An amicus curiae brief was filed by *Kelli S. Thompson*, state public defender, and *Jefren E. Olson*, assistant state public defender, on behalf of the Office of the State Public Defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2009AP3073-CR
(L.C. No. 2007CT1130)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Michael R. Griep,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**APR 23, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] that affirmed the circuit court's[2] ruling that admitted an expert witness's testimony that established the blood alcohol concentration (BAC) of Michael R. Griep while he was operating his vehicle. The expert witness, Patrick Harding, based his opinion in part on forensic tests conducted by an analyst at the Wisconsin State Laboratory of

---

[1] State v. Griep, 2014 WI App 25, 353 Wis. 2d 252, 845 N.W.2d 24.

[2] The Honorable Thomas J. Gritton of Winnebago County, presided.

Hygiene (Wisconsin State Laboratory) who was unavailable for trial. Based on Harding's testimony, Griep was convicted of operating a motor vehicle while intoxicated (third offense).

¶2 Griep appealed, contending that his right of confrontation was violated when the circuit court allowed Harding to rely in part on the analyst's forensic test results. The court of appeals affirmed, concluding that Griep's right of confrontation was not violated because Harding reviewed the analyst's forensic test results and other records and formed an independent opinion of Griep's BAC, as approved in State v. Williams,[3] 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919 and State v. Barton, 2006 WI App 18, 289 Wis. 2d 206, 709 N.W.2d 93. State v. Griep, 2014 WI App 25, ¶¶19, 22, 353 Wis. 2d 252, 845 N.W.2d 24.

¶3 We conclude that Harding's review of Griep's laboratory file, including the forensic test results of an analyst who was unavailable for trial, to form an independent opinion to which he testified did not violate Griep's right of confrontation. Williams, 253 Wis. 2d 99, ¶26; Barton, 289 Wis. 2d 206, ¶20. Accordingly, we affirm the court of appeals decision that affirmed the circuit court's admission of Harding's testimony.

---

[3] We refer to all subsequent references to State v. Williams, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919, as Williams. We refer to Williams v. Illinois, __ U.S. __, 132 S. Ct. 2221 (2012), a different case, as Williams v. Illinois.

## I.  BACKGROUND

¶4   This review involves Griep's claimed violation of his right of confrontation regarding Harding's expert testimony that was based in part on results of forensic tests conducted by an analyst who was unavailable for trial.  The historic facts are not in dispute.

¶5   On Saturday, August 25, 2007, at approximately 12:48 a.m., a Winneconne Police Department officer stopped Griep for speeding, for which he planned to issue a warning ticket.  However, while talking with Griep, the officer smelled the odor of alcohol and observed Griep's bloodshot and glassy eyes.

¶6   In response to the officer's question about alcohol consumption, Griep stated that he drank a couple of beers at a local bar.  When the officer asked Griep to perform field sobriety tests, Griep agreed.  Griep's performance on the field sobriety tests indicated that he was intoxicated.  After further discussion, Griep admitted he had four beers.  Griep agreed to perform a preliminary breath test that also indicated intoxication.  The officer reviewed Griep's record, which showed two prior convictions for OWI.  The officer transported Griep to a nearby hospital for a blood draw.  At the officer's request, hospital staff conducted the blood draw without Griep's consent.[4]

---

[4] The warrantless, nonconsensual search is not an issue in our review.  Griep has not claimed that his blood draw was unconstitutional before the circuit court, court of appeals, or during our review.  See Missouri v. McNeely, 569 U.S. __, 133 S. Ct. 1552, 1556 (2013), abrogating our decision in State v. Bohling, 173 Wis. 2d 529, 547, 494 N.W.2d 399 (1993); see also

(continued)

¶7   The officer observed a phlebotomist draw Griep's blood and place it in closed vials.   The blood kit was properly sealed.   The blood kit was secured at the Winneconne Police Department before it was mailed to the Wisconsin State Laboratory.

¶8   Wisconsin State Laboratory analyst Diane Kalscheur received and analyzed Griep's blood sample.   Kalscheur authored a concise report stating:   (1) she received Griep's labeled and sealed blood sample, and (2) Griep's blood was tested for ethanol and that testing revealed a certain ethanol concentration.   Thomas Ecker, an Advanced Chemist at the laboratory, conducted a peer review of Kalscheur's report and signed the laboratory report under the statement "As designee of the Director, I do hereby certify this document to be a true and correct report of the findings of the Wisconsin State Laboratory of Hygiene."

¶9   At Griep's trial for third-offense OWI, the phlebotomist testified about instructions for collecting blood, using the kit provided by a police officer, and her role in inspecting the blood kit before its use.

¶10 Kalscheur was unavailable at the time of trial.[5] Instead, the State called Patrick Harding, section chief of the toxicology section of the Wisconsin State Laboratory, as an

State v. Foster, 2014 WI 131, ¶6, __ Wis. 2d __, 856 N.W.2d 847; State v. Kennedy, 2014 WI 132, ¶33, __ Wis. 2d __, 856 N.W.2d 834.

[5] Kalscheur was on leave at the time of trial.

expert witness. Harding testified that he had reviewed Kalscheur's work and examined the data produced by Kalscheur's testing, specifically the chromatograms, as well as other records associated with the tests Kalscheur performed. Harding said that he was familiar with the process of obtaining blood samples for ethanol testing, shipping them to the laboratory, processing them for analysis, and the analysis of the samples.

¶11 When the State asked Harding's opinion on whether Kalscheur tested Griep's blood sample consistently with laboratory procedures, defense counsel objected on Confrontation Clause grounds. Harding testified that all indications were that Kalscheur followed the laboratory procedures and that the instrument was working properly. Harding said that the machine's proper function was evident from the results of calibration checks run throughout the course of the tests of Griep's samples. Harding concluded that the results of those calibration checks, in particular those Kalscheur ran immediately before and after the Griep samples, showed the reliability of the machine's results. Harding opined that correctly running the sample through the calibrated instrument resulted in a reliable blood alcohol reading. Harding concluded that after reviewing all of the available data, he came to an independent opinion that the alcohol concentration in Griep's blood was 0.152 grams of ethanol per 100 milliliters of blood. Harding also testified as to laboratory procedures and that if there had been irregularities with the sample, they would have been noted on a form by the analyst. None were noted.

¶12 During cross-examination, Harding acknowledged that an analyst could commit misdeeds, possibly without detection. Harding also acknowledged that it is important that the analyst be competent and honest.  Harding testified that when he testifies about forensic tests that he has personally completed, he relies on the paperwork and notes he completed at the time of testing because analysts at the laboratory conduct so many tests that no one can remember details about each particular sample without reviewing the notes that were made contemporaneously with the tests.

¶13 Griep's motion in limine and objection at trial that sought to preclude Harding's testimony were grounded in the Confrontation Clause.  He relied on Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009); Crawford v. Washington, 541 U.S. 36 (2004); and their relationship to Williams and Barton. The circuit court considered the Confrontation Clause issue after conclusion of the presentation of evidence at the bench trial.  The circuit court denied Griep's motion; heard closing arguments; adjudged Griep guilty; convicted and sentenced him.

¶14 Griep appealed.  Before the court of appeals issued its decision, the United States Supreme Court accepted a petition in State v. Bullcoming, 226 P.3d 1 (N.M. 2010).  See Bullcoming v. New Mexico, 561 U.S. 1058 (2010) (granting certiorari).  The court of appeals held Griep's case in abeyance

pending the outcome in Bullcoming because the question presented in that case[6] was similar to the question in Griep's appeal.

¶15 As the court of appeals was again about to undertake Griep's appeal, the court learned that the United States Supreme Court had granted certiorari in another relevant case, People v. Williams, 939 N.E.2d 268 (Ill. 2010). See Williams v. Illinois, __ U.S. __, 131 S. Ct. 3090 (2011) (granting certiorari). The court of appeals once again held Griep's case to await the outcome in Williams v. Illinois because the decision on the question presented[7] may have had an effect on Griep's appeal.

¶16 On May 15, 2013, the court of appeals certified the appeal to us.[8] On June 14, 2013, we held the certification in

---

[6] The question presented in Bullcoming was "[w]hether the Confrontation Clause permits the prosecution to introduce testimonial statements of a nontestifying forensic analyst through the in-court testimony of a supervisor or other person who did not perform or observe the laboratory analysis described in the statements." Petition for a Writ of Certiorari at i, Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705 (2011) (No. 09-10876), 2010 WL 3761875.

[7] The question presented in Williams v. Illinois was "[w]hether a state rule of evidence allowing an expert witness to testify about the results of DNA testing performed by non-testifying analysts, where the defendant has no opportunity to confront the actual analysts, violates the Confrontation Clause." Petition for a Writ of Certiorari at i, Williams v. Illinois, __ U.S. __, 132 S. Ct. 2221 (No. 10-8505), 2010 WL 6817830.

[8] The court of appeals, in its certification, defined the issue as "Is an OWI defendant's right to confront the witnesses against him violated when a supervisor of the state crime lab testifies that a lab report prepared and certified by another, but unavailable, lab analyst establishes the defendant's illegal blood alcohol concentration? Does it make a difference that the

(continued)

7

abeyance pending our disposition of State v. Deadwiller. See State v. Deadwiller, 2013 WI 75, 350 Wis. 2d 138, 834 N.W.2d 362 (decided July 16, 2013). On November 20, 2013, we refused certification. The court of appeals issued its opinion February 19, 2014, and held that Barton remained good law. Griep, 353 Wis. 2d 252, ¶22. The court held that "the availability of a well qualified expert, testifying as to his independent conclusion about the ethanol testing of Griep's blood as evidenced by a report from another state lab analyst, was sufficient to protect Griep's right to confrontation." Id.

## II.  DISCUSSION

### A.  Standard of Review

¶17 We review whether Harding's testimony, particularly his reliance on testing conducted by Kalscheur, violated Griep's right of confrontation. While "a circuit court's decision to admit evidence is ordinarily a matter for the court's discretion, whether the admission of evidence violates a defendant's right of confrontation is a question of law subject to independent appellate review." Deadwiller, 350 Wis. 2d 138, ¶17 (quoting Williams, 253 Wis. 2d 99, ¶7).

---

lab supervisor said it was 'his' opinion even though he did not perform any of the testing himself and simply noted that the unavailable analyst followed the proper protocol?" Petition for Certification at 1, Griep, 353 Wis. 2d 252 (No. 2009AP3073-CR), 2013 WL 1978568 (Petition denied).

B. Confrontation Clause

¶18 Griep argues that Harding's testimony violated his rights under the Confrontation Clause. The Sixth Amendment Confrontation Clause provides "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." We begin by recognizing that the Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right, as made applicable to and obligatory on the states by the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965) (concluding that the Sixth Amendment right to confront witnesses against the accused is a fundamental right).

¶19 In Williams, we first examined whether a laboratory unit leader's trial testimony, based in part on a report authored and tests conducted by an analyst who did not testify at trial, violated the Confrontation Clause. Williams was on trial for possession of cocaine with intent to deliver. Williams, 253 Wis. 2d 99, ¶¶3-4. A crime laboratory unit leader testified as to her expert opinion based in part on a state crime laboratory report that showed a substance in Williams' possession was cocaine base. Williams argued his right of confrontation was violated when the crime laboratory unit leader testified rather than requiring the analyst who performed the laboratory tests to testify and also when the circuit court admitted the state crime laboratory report. Id., ¶4.

¶20 We held that the unit leader's testimony did not violate Williams' right of confrontation. Id., ¶¶20, 26. We stated:

> [T]he presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders her own expert opinion is sufficient to protect a defendant's right to confrontation, despite the fact that the expert was not the person who performed the mechanics of the original tests.

Id., ¶20. Regarding the independent expert's opinion, we opined that "an expert who forms an opinion based in part on the work of others and an expert who merely summarizes the work of others" are quite different because in that later instance, the expert would be "a mere conduit for the opinion of another." Id., ¶19.

¶21 We concluded that the expert witness in Williams was highly qualified to render an expert opinion and was closely connected to the tests and procedures involved in the actual tests. Id., ¶¶21-22. The expert witness was a unit leader at the Wisconsin State Laboratory with nine years of experience, a bachelor's degree in chemistry with some graduate courses, who had substantial experience analyzing for the presence of controlled substances. Id., ¶21. The witness also was familiar with the various tests and had performed peer review on the tests. Id., ¶22. The expert's peer review involved comparing the notes with the evidence and the conclusions, and conducting an overall examination of the data "making sure that all the

10

notes coincide with the evidence, [and] that the data coincides with [the] conclusion." Id. Additionally, we determined that the witness was "not merely a conduit" for another's opinion, but rather, she testified as to her independent opinion based in part on facts and data gathered by someone else.[9] Id., ¶25.

¶22 We also considered whether a laboratory report authored by the non-testifying analyst violated the defendant's right of confrontation when it was admitted into evidence. Id., ¶32. We analyzed the admissibility of the report and the expert witness's testimony as two separate issues. Id. First, we held that the laboratory report was not properly admitted as a business record under Wis. Stat. § 908.03(6) (1997-98), in part because it was prepared for litigation. Id., ¶49. However, we concluded that the report's admission was harmless error. Id., ¶50. Second, we evaluated the expert witness's testimony. In reaching our conclusion that admission of the report was harmless error, we regarded the expert witness's testimony as compelling and credible evidence from which the jury could have concluded the substance at issue was cocaine. Id., ¶52. Stated otherwise, the witness's opinion was constitutional, and that

---

[9] Stated otherwise, Williams permits a "substitute expert" to testify when "the original test was documented in a thorough way that permits the substitute expert to evaluate, assess, and interpret it." David H. Kaye, David E. Bernstein, & Jennifer L. Mnookin, The New Wigmore: Expert Evidence, § 4.10.2, p. 204 (2d ed. 2010). Furthermore, "the surrogate can be meaningfully cross-examined about the tests that were conducted (and those that were not), and questioned about the legitimacy of the original analyst's conclusions and interpretations." Id.

11

conclusion was unrelated to whether the admission of the report violated the Confrontation Clause.

¶23 Griep's contention appears to be addressed by the rule we set out in Williams. However, before proceeding to apply Williams to his claimed Confrontation Clause violation, we consider whether federal opinions issued subsequent to Williams, including Crawford, Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705 (2011), and Williams v. Illinois, __ U.S. __, 132 S. Ct. 2221 (2012), affect our conclusions in Williams.

### 1.  Relevant federal opinions

¶24 In 2004, the United States Supreme Court took up the Confrontation Clause in Crawford. At Crawford's trial for assault and attempted murder, he claimed self-defense. Crawford, 541 U.S. at 40. The defendant's wife did not testify "because of the state marital privilege, which generally [barred] a spouse from testifying without the other spouse's consent." Id. "[The] privilege [did] not extend to a spouse's out-of-court statements admissible under a hearsay exception." Id. The state sought to admit the wife's statement to police as a statement against penal interest. Id. On review, the Supreme Court held that admission of out-of-court testimonial statements violated the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Id. at 59.

¶25 Crawford's discussion of testimonial statements of an unavailable declarant is consistent with the Williams requirement that in order to be permitted to testify an expert

12

must form an independent opinion when the expert's opinion is based in part on tests performed by another analyst.[10] See Williams, 253 Wis. 2d 99, ¶¶19, 25. This Williams' requirement prevents a Crawford violation of the Confrontation Clause because out-of-court statements are not admitted as evidence, but rather, they are replaced by independent opinions based both on data collected by others and on the expert's own analysis.

¶26 Subsequent to the Supreme Court's decision in Crawford, the court of appeals applied Williams. Barton, 289 Wis. 2d 206, ¶¶9, 20. In Barton, the court of appeals' discussion focused on whether a unit leader at the state crime laboratory could testify based in part on tests performed by another analyst. The unit leader at the state crime laboratory testified about chemical tests performed by an analyst who was unavailable at trial. Id., ¶4. The expert witness conducted peer review of the analyst's tests and testified as to his independent expert opinion. Id., ¶¶4, 16. The State did not seek to admit the laboratory report that detailed the analyst's test results. Id., ¶4.

---

[10] The instant case does not present the same issues as Crawford as the testimonial statements of an unavailable declarant were not admitted into evidence in this case. Cf. Crawford v. Washington, 541 U.S. 36, 40 (2004). Stated otherwise, because neither Kalscheur's report nor the report's conclusion was admitted into evidence, the Crawford holding is not at issue.

¶27 The court of appeals applied Williams and held the testimony did not violate Barton's right of confrontation.[11] Id., ¶¶9-13, 16, 20. The court concluded that the expert witness was a highly qualified expert who presented his independent opinion. Id., ¶13. The court noted that the witness held a supervisory position, had an academic background in the area, and had significant experience with the crime laboratory, all of which were similar to the expert in Williams. Id. The witness testified that he had reviewed the case file, including the gas chromatography tests, as a formal peer review. He explained the uniform procedures employed by the crime laboratory for the tests at issue. He said that based in part on his review of the case file, the analyst had followed the required procedures in the tests. Id., ¶14. The court concluded that the expert's testimony was an independent opinion based on his own experience and his own analysis of the testing. Id., ¶¶14-16. The court of appeals held that under Williams, the witness's testimony did not violate Barton's right of confrontation and was admissible. Id., ¶16.

---

[11] The court of appeals also referred to cases decided after Crawford from other jurisdictions, holding similar testimony did not violate the Confrontation Clause. State v. Barton, 2006 WI App 18, ¶¶21-22, 289 Wis. 2d 206, 709 N.W.2d 93 (citing State v. Delaney, 613 S.E.2d 699, 700 (N.C. Ct. App. 2005); People v. Thomas, 30 Cal. Rptr. 3d 582, 587 (Cal. Ct. App. 2005), abrogated by People v. Archuleta, 170 Cal. Rptr. 3d 361 (Cal. Ct. App. 2014)).

¶28 The court of appeals also clarified the effect of Crawford on Williams: "The holding in Crawford does not undermine our supreme court's decision in Williams. Williams is clear: A defendant's confrontation right is satisfied if a qualified expert testifies as to his or her independent opinion, even if the opinion is based in part on the work of another." Id., ¶20.

¶29 In Melendez-Diaz, the United States Supreme Court again took up the admissibility of forensic reports created by a non-testifying laboratory analyst. At issue was whether affidavits reporting forensic analyses were testimonial, "rendering the affiants 'witnesses' subject to the defendant's right of confrontation under the Sixth Amendment." Melendez-Diaz, 557 U.S. at 307. Those affidavits showed a substance connected to the defendant was cocaine, and were created specifically to serve as evidence at a criminal trial. Id. at 324. The Supreme Court held that the forensic laboratory reports were testimonial statements subject to the Confrontation Clause, and therefore, defendants have a right to confront the authoring analyst at trial. Id. at 311. The Court recognized that Melendez-Diaz falls within the Crawford line of cases: "This case involves little more than the application of our holding in Crawford v. Washington . . . . The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits." Id. at 329. Melendez-Diaz's holding regarding the testimonial nature of laboratory reports does not alter our conclusion in Williams that a defendant's right to

15

confront witnesses against him is not violated when a testifying expert reviews the case file and comes to an independent conclusion, even though the expert's opinion is based in part on tests performed by another analyst.[12] See Williams, 253 Wis. 2d 99, ¶¶19, 25.

¶30 In its 2011 decision in Bullcoming, the United States Supreme Court next revisited the Confrontation Clause's applicability to forensic laboratory reports. At Bullcoming's trial on charges of driving while intoxicated, the trial court admitted a forensic laboratory report certifying that Bullcoming's BAC was above the BAC threshold for driving under the influence. Bullcoming, 131 S. Ct. at 2709. The analyst who certified the laboratory report did not testify. Instead, the prosecution called a different analyst as a witness. Id. The witness was familiar with the laboratory's testing procedures, but did not participate in, observe, or review the testing of the defendant's blood sample. Id. at 2709, 2712. The Court focused on whether the prosecution could admit a laboratory

---

[12] Likewise, Griep's contention does not present the same issues as Melendez-Diaz because the non-testifying analyst's written report and other records were not admitted into evidence. See United States v. Turner, 709 F.3d 1187, 1190 (7th Cir. 2013) (concluding that a case involving testimony based in part on another analyst's forensic tests did not present a Melendez-Diaz problem). Therefore, whether the laboratory report here was created specifically to serve as evidence in a criminal proceeding, or introduced to prove the truth of the matter asserted, is not relevant to our review. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (introducing drug analysis report to prove substance was cocaine).

16

report containing a testimonial certification through the in-court testimony of a witness that did not certify the report or perform or observe the test that was the subject of the report. Id. at 2710. The Court held that admission of the report violated the defendant's right of confrontation and reiterated the rule in Crawford. Id. at 2713.

> Our answer is in line with controlling precedent: As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.

Id.

¶31 The Supreme Court's discussion in Bullcoming differs from the section of our Williams decision that is relevant to Griep's contention of a Confrontation Clause violation. In Bullcoming, the prosecution admitted the forensic report as a business record in violation of the Confrontation Clause. Id. at 2712. Williams also concludes that the forensic report cannot properly be admitted as a business record. Williams, 253 Wis. 2d 99, ¶49. However, in Williams, the expert witness reviewed the work of the testing analyst, was familiar with the procedures at hand, and rendered an independent opinion. Id., ¶¶21-22. The testimony in Bullcoming is not the independent opinion of an expert. See Bullcoming, 131 S. Ct. at 2712, 2716 (stating that the witness did not review the test results and prosecution never asserted that the witness had an independent opinion concerning the defendant's BAC). Therefore, when an expert witness reviews data yielded by laboratory tests and

17

reaches his or her own independent opinion based on that data and his or her own knowledge, Williams applies and Bullcoming provides no guidance.

¶32 Justice Sotomayor emphasized the limited reach of Bullcoming in her concurrence. Id. at 2722 (Sotomayor, J., concurring). She wrote separately to highlight her view that the laboratory report was testimonial because its primary purpose was evidentiary, but she also wrote "to emphasize the limited reach of the Court's opinion." Id. at 2719. Justice Sotomayor distinguished Bullcoming from other cases where the trial witness "is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." Id. at 2722. She also distinguished cases where the expert witness was asked for and gave an independent opinion about underlying testimonial reports that were not admitted into evidence. Id. She noted that in Bullcoming, the prosecution acknowledged that the witness offered no opinion about the BAC. Justice Sotomayor concluded: "We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence." Id. Justice Sotomayor's concurrence reinforces our conclusion that Bullcoming does not guide our decision when the issue is the independent opinion of an expert witness who has reviewed the forensic test results, rather than the admissibility of an underlying forensic report.

18

¶33 The Supreme Court provided guidance on when out-of-court testimonial statements are admissible, when statements are testimonial, and under what circumstances testimonial laboratory reports are admissible in Crawford, Melendez-Diaz, and Bullcoming.  Crawford, 541 U.S. at 59; Melendez-Diaz, 557 U.S. at 311; Bullcoming, 131 S. Ct. at 2713.  Wisconsin cases, Williams and Barton, go a step further and address situations where the State does not offer the laboratory report into evidence, but instead offers the independent opinion of an analyst who did not perform the tests.  Williams, 253 Wis. 2d 99, ¶20; Barton, 289 Wis. 2d 206, ¶16.  Stated otherwise, federal Confrontation Clause opinions predating Williams v. Illinois do not affect our rule in Williams, or the court of appeals' application in Barton.  We now examine whether Williams v. Illinois affects Williams and Barton.

¶34 Williams v. Illinois, the Supreme Court's most recent Confrontation Clause opinion that examines presentation of expert opinion, involved Williams' bench trial for rape.  There, the prosecutor called a forensic specialist at the Illinois State Police laboratory who testified that according to the police laboratory's business records, the victim's vaginal swabs were sent to Cellmark, an outside, accredited laboratory.  Williams v. Illinois, 132 S. Ct. at 2229.  Cellmark returned the swabs to the police laboratory, and set out a male DNA profile derived from the semen on the swabs.  Id.  Upon receipt of the report and profile, a police laboratory analyst conducted a search of the Illinois State DNA database, revealing that

19

Williams' DNA matched the DNA profile obtained from the swabs processed by Cellmark. Id. The police laboratory analyst testified about standard procedures, about Cellmark's accreditation, and that her comparison of the DNA profiles on the Illinois database with the Cellmark profile resulted in a match. Id. at 2229-30. The Cellmark DNA profile was not admitted into evidence. Id. at 2230. The defendant objected to the expert's testimony on Confrontation Clause grounds. Id. at 2231. The trial court ruled against Williams. Id.

¶35 Williams v. Illinois is a plurality opinion with Justice Thomas concurring in judgment.[13] Id. at 2227. A plurality of the Supreme Court held the expert's testimony did not violate Williams' right of confrontation. However, the Court's four-one-four division "left no clear guidance about how exactly an expert must phrase [his] testimony [that concerns] the results of testing performed by another analyst in order for the [expert's] testimony to be admissible." United States v. Maxwell, 724 F.3d 724, 727 (7th Cir. 2013); see also Williams v. Illinois, 132 S. Ct. at 2277 (Kagan, J., dissenting); id. at 2255 (Thomas, J., concurring in the result, but with no portion of the plurality's reasoning).

¶36 In determining what effect a plurality opinion has on our review, we apply Marks v. United States, 430 U.S. 188, 193

---

[13] Justice Breyer also wrote a concurrence in Williams v. Illinois, but in contrast to Justice Thomas, he joined the plurality's opinion in full. See Williams v. Illinois, 132 S. Ct. at 2244-45, 2252 (Breyer, J., concurring).

(1977). <u>Deadwiller</u>, 350 Wis. 2d 138, ¶30; <u>see also</u> <u>Vincent v. Voight</u>, 2000 WI 93, ¶46 n.18, 236 Wis. 2d 588, 614 N.W.2d 388; <u>Lounge Mgmt., Ltd. v. Town of Trenton</u>, 219 Wis. 2d 13, 21-22, 580 N.W.2d 156 (1998). "When a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." <u>Marks</u>, 430 U.S. at 193 (internal quotations and citations omitted). The <u>Marks</u> narrowest grounds rule is applicable only when one opinion is narrower than the other or is a logical subset of another, broader opinion. <u>Deadwiller</u>, 350 Wis. 2d 138, ¶30 (citing Evan H. Caminker, <u>Precedent and Prediction: The Forward-Looking Aspects of Inferior Court Decisionmaking</u>, 73 Tex. L. Rev. 1, 33 n.120 (1994)); <u>King v. Palmer</u>, 950 F.2d 771, 781 (D.C. Cir. 1991). If no "theoretical overlap" exists between the rationales of the plurality and the concurrence, it is binding only as to its "specific result." <u>Deadwiller</u>, 350 Wis. 2d 138, ¶30 (citing <u>Berwind Corp. v. Comm'r of Soc. Sec.</u>, 307 F.3d 222, 234 (3d Cir. 2002)).[14] A plurality opinion without overlapping

---

[14] See also <u>Ass'n of Bituminous Contractors, Inc. v. Apfel</u>, 156 F.3d 1246, 1254-55 (D.C. Cir. 1998) (agreeing that when <u>Marks</u> does not apply for lack of a "narrowest opinion," the only binding aspect of a particular fractured opinion was its specific result); <u>Shenango Inc. v. Apfel</u>, 307 F.3d 174, 185 (3d Cir. 2002) (stating that the only binding aspect of a fragmented decision without a narrower ground is the specific result); <u>Lair v. Bullock</u>, 697 F.3d 1200, 1205 (9th Cir. 2012) (stating that if no opinion of the Court is narrow, the splintered decision is binding only as to its specific result); <u>Gibson v. Am. Cyanamid</u>
(continued)

21

rationales requires a specific result only when the parties are in a "substantially identical position."  Id.

¶37  Williams v. Illinois does not contain a "narrowest opinion."  Williams v. Illinois, 132 S. Ct. at 2228, 2244-45 (Breyer, J., concurring), 2255 (Thomas, J., concurring); Deadwiller, 350 Wis. 2d 138, ¶32.  Five justices of the United States Supreme Court concluded in Williams v. Illinois that, in certain circumstances, the Confrontation Clause does not bar an expert witness from basing his or her testimony on a forensic laboratory report prepared by another analyst when the defendant was never given an opportunity to cross-examine the analyst who prepared the report or conducted the forensic testing.  Williams v. Illinois, 132 S. Ct. at 2228.  However, no opinion gathered a majority of the Court.  Id. at 2244, 2252 (Breyer, J., concurring), 2261 (Thomas, J., concurring).  The four justices of the plurality concluded that the testimony did not violate the Confrontation Clause because the report was not used to prove the truth of the matter asserted and its primary purpose was not to accuse a targeted individual of a crime.  Id. at 2243.  While a fifth justice agreed with the disposition of the case, he concluded that the report was non-testimonial because

Co., 760 F.3d 600, 615, 619-20 (7th Cir. 2014) (acknowledging a fractured opinion produced only its specific result as binding precedent because no opinion was narrowest); State v. Michaels, 95 A.3d 648, 665-66 (N.J. 2014) (citing Deadwiller and noting that the Marks approach works only when the narrowest opinion represents a common denominator and when no overlap exists, a fragmented decision is binding only as to its specific result).

22

it "lacked the requisite 'formality and solemnity' to be considered 'testimonial.'"[15]    Id. at 2255 (Thomas, J., concurring).    Four justices rejected both the plurality's primary purpose test and Justice Thomas' solemnity-based test and instead concluded that the expert testimony was "functionally identical to the 'surrogate testimony'" in Bullcoming and that Bullcoming controlled the outcome.[16]    Id. at 2267 (Kagan, J., dissenting).    As no opinion overlaps with another, the Marks narrowest grounds rule does not apply to Williams v. Illinois.    Marks, 430 U.S. at 193; Deadwiller, 350 Wis. 2d 138, ¶30; King, 950 F.2d at 781.

¶38  Therefore, Williams v. Illinois is binding only as to its "specific result."    Deadwiller, 350 Wis. 2d 138, ¶30 (citing Berwind Corp., 307 F.3d at 234).    A plurality opinion without a narrowest grounds concurrence requires a specific result when

---

[15] Justice Thomas' concurrence in Williams v. Illinois also explicitly rejected the plurality's "flawed analysis" and asserted that "there was no plausible reason for the introduction of Cellmark's statements other than to establish their truth."    Williams v. Illinois, 132 S. Ct. at 2255-56 (Thomas, J., concurring).

[16] Under Marks, the positions of the justices who dissented from the judgment are not counted in examining the divided opinions for holdings.    Marks v. United States, 430 U.S. 188, 193 (1977).    Rather, Marks instructs that the holding is the narrowest position "taken by those Members who concurred in the judgment[]."    Id. (internal quotation marks and citation omitted).    Therefore, Marks rejects any contention that the holding of Williams v. Illinois is Justice Thomas' and the dissent's rejection of the plurality's not-for-the-truth rationale.    Cf. Leading Cases, 126 Harv. L. Rev. 266, 276 (Nov. 2012).

23

the parties are in a substantially identical position.  Berwind, 307 F.3d at 234.  Griep is not in a substantially identical position to the parties in Williams v. Illinois.  The difference between Griep's circumstances and those in Williams v. Illinois is illustrated by our recent opinion in Deadwiller.

¶39  Deadwiller is our sole Confrontation Clause case since Williams v. Illinois.  In Deadwiller, the defendant was identified as a suspect in a sexual assault through a DNA profile derived at an out-of-state laboratory from the victim's vaginal and cervical swabs, which matched Deadwiller's profile in Wisconsin's DNA database.  Deadwiller, 350 Wis. 2d 138, ¶5.  We considered application of the Marks narrowest ground principle to Williams v. Illinois, but concluded that no Williams v. Illinois concurring opinion fit the narrowest grounds rule.  Id., ¶¶30-32.  We recognized that Williams v. Illinois would still be binding as to its specific result when the parties are in a substantially identical position.  Id., ¶30 (citing Berwind, 307 F.3d at 234).  We compared the facts of each case and concluded that Deadwiller and Williams were in substantially identical positions, and therefore we were bound by the specific result in Williams v. Illinois.  Id., ¶32.  In concluding we were so bound, we noted similarities in the cases. Id.

> In both cases, the victim reported the crime and underwent a sexual assault examination, which produced vaginal swabs containing DNA of the perpetrator. In both cases, police officers picked up the evidence, inventoried the evidence, and sent the evidence to the state crime lab, which then sent the evidence to an

24

out-of-state laboratory for DNA testing. Further, the out-of-state laboratory in both cases sent back the genetic material and a DNA profile of the perpetrator produced from the vaginal swabs. In both cases, state crime lab analysts entered the DNA profile into a DNA database, which resulted in a match to the defendant. When called to testify, the state crime lab analyst in both cases reported that the DNA profile sent by the out-of-state lab matched the DNA profile resulting from the database. The DNA profile was not introduced into evidence in either case. Prosecutors in both cases introduced inventory reports, evidence receipts, and testimony to prove a chain of custody, i.e. that the DNA profile was produced from swabs taken from the victims.

Id.

¶40 Deadwiller concludes the lines of relevant state and federal Confrontation Clause cases. In review, Williams and Barton establish that an expert witness does not violate the Confrontation Clause when his or her opinion is based in part on data created by a non-testifying analyst if the witness "was not merely a conduit." Williams, 253 Wis. 2d 99, ¶¶20, 25; accord Barton, 289 Wis. 2d 206, ¶¶13-14. In other words, if the expert witness reviewed data created by the non-testifying analyst and formed an independent opinion, the expert's testimony does not violate the Confrontation Clause. Williams, 253 Wis. 2d 99, ¶20; Barton, 289 Wis. 2d 206, ¶¶13-14. No federal decision addresses this type of expert testimony. In Crawford, admission of testimonial statements of an unavailable declarant violated the Confrontation Clause if the declarant was unavailable and the defendant had no prior opportunity to cross-examine. Crawford, 541 U.S. at 59. Melendez-Diaz applied Crawford to conclude that testimonial statements made in a forensic report

25

that was admitted into evidence, but was created by a non-testifying analyst, violated the Confrontation Clause. Melendez-Diaz, 557 U.S. at 311. The facts of Bullcoming go one step further, involving both the admission of a testimonial forensic report and testimony of an expert witness who did not conduct the tests or offer an independent opinion. Bullcoming, 131 S. Ct. at 2712, 2716. However, Crawford, Melendez-Diaz, and Bullcoming do not address a situation where a non-testifying analyst's testimonial statements do not come into evidence, i.e., where the testimonial forensic report is not admitted and the expert witness who testifies at trial gives his or her independent opinion after review of laboratory data created another analyst. Stated otherwise, when a non-testifying analyst documents the original tests "with sufficient detail for another expert to understand, interpret, and evaluate the results," that expert's testimony does not violate the Confrontation Clause. David H. Kaye, David E. Bernstein, & Jennifer L. Mnookin, The New Wigmore: Expert Evidence, § 4.10.2, pp. 204-05 (2d ed. 2010); accord Williams, 253 Wis. 2d 99, ¶20; Barton, 289 Wis. 2d 206, ¶¶13-14. Williams v. Illinois has not altered Confrontation Clause jurisprudence, which we confirmed in Deadwiller. See Deadwiller, 350 Wis. 2d 138, ¶30.

2. Griep's circumstances

¶41 In the case now before us, we compare the parties' positions in Griep to that of the parties' positions in Williams v. Illinois and conclude that they are not in substantially identical positions. First, this is not a sexual assault case.

26

Cf. Williams v. Illinois, 132 S. Ct. at 2229. Here, analysts used a laboratory test, gas chromatography, to determine Griep's BAC, which differs from the creation of a DNA profile and the process of matching DNA profiles that was used in Williams v. Illinois. Cf. id. Second, the analyst conducted all of the laboratory work here in the same laboratory that employed the expert witness, rather than utilizing work provided by an outside laboratory. Cf. id. at 2229-30. The only similarity between this case and Williams v. Illinois is that the prosecution did not introduce the forensic reports into evidence in either case. Id. at 2230.

¶42 We conclude Griep is not in a substantially identical position to Williams. Therefore, the specific result of Williams v. Illinois is not binding in this case as it was in Deadwiller. Cf. Deadwiller, 350 Wis. 2d 138, ¶32. For that reason, we need not further discuss the various rationales of Williams v. Illinois as we did in Deadwiller. See id., ¶¶33-36.

¶43 Aside from its discussion of the Williams v. Illinois rationales, Deadwiller also provides our only post-Williams v. Illinois analysis of Williams and Barton. Id., ¶¶37-40. We concluded that Williams and Barton are consistent with our application of the specific result of Williams v. Illinois. Id., ¶37. We applied Williams and Barton to the facts in Deadwiller and determined that the expert witness reviewed the out-of-state laboratory's procedures and offered his independent conclusion, and therefore did not violate the defendant's right of confrontation. Id., ¶40.

27

¶44 As we tacitly recognized in Deadwiller, nothing in Williams v. Illinois affects our decision in Williams and its application by the court of appeals in Barton.[17] See id., ¶¶37-40.  In addition, Williams v. Illinois is not otherwise useful to our analysis here because Marks does not apply[18] and Griep is not in a substantially identical position to the convicted perpetrator.[19]  As Williams v. Illinois does not affect our conclusion in Williams or the court of appeals' application in Barton, our remaining task is to apply Williams and Barton to this case.

C.   Admission of Patrick Harding's Testimony

¶45 We rely on pre-Williams v. Illinois opinions, as well as our only Confrontation Clause decision after Williams v. Illinois, Deadwiller, to determine whether the State's witness, Patrick Harding, testified in violation of Griep's right of

---

[17] Other courts have also held Williams v. Illinois is "confined to the particular set of facts presented in that case."  United States v. James, 712 F.3d 79, 95 (2d Cir. 2013) (applying pre-Williams v. Illinois opinions); accord Jenkins v. United States, 75 A.3d 174, 189 (D.C. Cir. 2013) (agreeing Williams v. Illinois is confined to its facts and applying pre-Williams v. Illinois opinions in the Supreme Court and its own jurisdiction).

[18] Marks does not apply when no concurring opinion is narrower than the others.  See Marks, 430 U.S. at 193; State v. Deadwiller, 2013 WI 75, ¶30, 350 Wis. 2d 138, 834 N.W.2d 362; King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991).

[19] Cf.  Deadwiller, 350 Wis. 2d 138, ¶32 (concluding Deadwiller was in a substantially identical position in a case with different facts).

28

confrontation.[20]   Harding served as the State's expert witness for Griep's BAC and testified in place of Kalscheur, who was not available at the time of trial.   While Harding was not an official peer reviewer of Kalscheur's forensic tests, Harding testified that he examined the data "available the day after the analysis for the person that reviewed the report when it went out."   His review included chromatograms and results of the entire analytical run that Kalscheur conducted, which described the calibration checks that were used to assess whether the machine was performing properly and whether the test was run correctly.[21]

¶46 Harding testified that all indications were that Kalscheur followed the laboratory procedures, and the instrument was working properly.   Harding testified that the machine's proper function was evident from the results of calibration

---

[20] However, we note that Crawford, Melendez-Diaz, and Bullcoming are not helpful to our analysis because they focus on when out-of-court testimonial statements may be entered into evidence and what statements are testimonial.   Crawford, 541 U.S. at 59; Melendez-Diaz, 557 U.S. at 311; Bullcoming, 131 S. Ct. at 2713.   As our focus here is on the witness's in-court testimony, Crawford, Melendez-Diaz, and Bullcoming do not guide our analysis.

[21] It is significant that the laboratory file included not only Kalscheur's report but also raw data, gas chromatograms. This provided "adequate detail for an expert to do his own analysis and reach his own conclusions."   See Kaye, et al., supra note 9, p. 201.   In this case, "the expert is exercising a degree of independent judgment using his own substantive expertise rather than relying entirely on the expertise of others."   Id. at p. 202; accord Williams, 253 Wis. 2d 99, ¶20; Barton, 289 Wis. 2d 206, ¶¶13-14.

checks run throughout the course of the tests. Harding said, "[t]he calibration checks that are analyzed throughout the course of the analytical run read correctly, specifically and importantly, the two known samples that bracketed Mr. Griep's sample read within their accepted range." Harding opined that correctly running the sample through the testing instrument resulted in a reliable blood alcohol reading. Harding also opined that after reviewing the data, he came to an independent opinion that Griep's BAC was 0.152.[22] And finally, it was Harding's opinion that laboratory procedures required notation of any irregularities with the sample, and there had been no such notation by the analyst.

¶47 Consistent with Williams and Barton, the pre-Williams v. Illinois law of this jurisdiction, Harding's testimony did not violate Griep's right of confrontation; accordingly, his testimony was properly admitted.[23] Our Confrontation Clause jurisprudence begins with Williams. Williams set out a two-part framework to analyze the testimony of an expert witness, relying

---

[22] That Harding arrived at and testified to the same conclusion as Kalscheur's report, that Griep's BAC was 0.152, does not require us to conclude that Harding's testimony introduced Kalscheur's report. Harding's review of Griep's laboratory file and his opinion formed by interpretation of raw data using his expertise merely yielded the same independent opinion reached by Kalscheur.

[23] United States Supreme Court opinions prior to Williams v. Illinois do not assist in our analysis or affect the value of Williams and Barton, as previously discussed. Additionally, Williams v. Illinois does not affect the value of those two cases. See Deadwiller, 350 Wis. 2d 138, ¶¶37-40.

30

on forensic tests conducted by a non-testifying analyst, for Confrontation Clause violations. Williams, 253 Wis. 2d 99, ¶26. Williams provides that expert testimony based in part on tests conducted by a non-testifying analyst satisfies a defendant's right of confrontation if the expert witness:  (1) reviewed the analyst's tests, and (2) formed an independent opinion to which he testified at trial. Id.  We address each requirement of Williams' framework in turn.

1.  Review

¶48  In both Williams and Barton, the analyst who conducted the testing was unavailable to testify at trial.  Instead, the analysts' supervisors testified as expert witnesses about the independent opinions they formed. Williams, 253 Wis. 2d 99, ¶22; Barton, 289 Wis. 2d 206, ¶15.  In both Williams and Barton, the supervisors conducted reviews in the ordinary course of laboratory procedures. Williams, 253 Wis. 2d 99, ¶22; see Barton, 289 Wis. 2d 206, ¶14.

¶49 Peer review generally involves examining the notes taken and data collected in the case to make sure the conclusions written in the report are correct. Williams, 253 Wis. 2d 99, ¶22.  In Williams, the expert witness testified how peer review operates when testing for a controlled substance: she compared the graphical data yielded by the tests and graphs reflecting standard, known, values. Id., ¶23.  The expert's comparison allowed her to conclude the sample being tested was a controlled substance. Id.  In Barton, an arson case, the expert used graphical data called chromatograms from different stages

31

of gasoline evaporation to conclude gasoline was present in charred wood samples. Barton, 289 Wis. 2d 206, ¶15. The expert in Barton compared the chromatograms of control samples with chromatograms of the samples from the arson case, similar to the expert's comparison in Williams. See id.

¶50 Here, Harding did not conduct a formal peer review of Kalscheur's tests. Instead, peer review was completed by Thomas Ecker, an advanced chemist at the laboratory. However, Harding completed the same examination as occurs in the formal peer review. Harding examined "[t]he same data that is available the day after the analysis for the person that reviewed the report when it went out and that is the chromatograms and the paperwork associated with the whole analytical run that Diane did on the 30th of August, 2007." In short, Harding reviewed the same data as the peer reviewer.

¶51 Our decisions indicate that the review necessary to protect a defendant's right of confrontation need not be formal peer review. Williams, 253 Wis. 2d 99, ¶20; Deadwiller, 350 Wis. 2d 138, ¶40. In Williams, we reasoned: "the presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders her own expert opinion is sufficient to protect a defendant's right to confrontation." Williams, 253 Wis. 2d 99, ¶20. Similarly, in Deadwiller, the expert witness's review of the out-of-state laboratory's DNA profile, procedures, and quality control

32

measures was sufficient to protect the defendant's right of confrontation.

¶52 Harding's review of Kalscheur's report, data, and notes fulfills the Williams review requirement because he reexamined the data. See Williams, 253 Wis. 2d 99, ¶¶22-23. Therefore, Harding's review was sufficient to protect Griep's right of confrontation, when combined with Harding's independent opinion.

## 2. Independent opinion

¶53 In both Williams and Barton, the expert witness offered his or her independent opinion based in part on the data provided by the non-testifying analyst and the expert witness's own expertise. See Williams, 253 Wis. 2d 99, ¶¶25-26; Barton, 289 Wis. 2d 206, ¶16. Williams and Barton also discussed the expert witnesses' qualifications and noted they were qualified to give an expert opinion based on the information before them. Williams, 253 Wis. 2d 99, ¶21; Barton, 289 Wis. 2d 206, ¶¶13, 16. We discussed the role of an independent opinion most thoroughly in Williams, where we stated that "one expert cannot act as a mere conduit for the opinion of another." Williams, 253 Wis. 2d 99, ¶19. However, we recognized that an expert may form an independent opinion based in part on the work of others without acting as a "conduit." Id., ¶25.

¶54 In Williams, the expert witness reviewed the tests done by another analyst, including the data and notes, and then formed her own opinion. Id. We concluded that the testifying expert's opinion was sufficiently independent to protect the

defendant's right of confrontation, and was not a mere recitation of another analyst's conclusions. Id., ¶¶25-26. In Barton, the expert offered his opinion based on his review of the entire file, including data similar to the chromatograms in this case. Barton, 289 Wis. 2d 206, ¶¶13-14. The court of appeals concluded the expert's testimony was his independent opinion. Id., ¶13.

¶55 Here, Harding was qualified to present testimony on the laboratory procedures and come to an independent opinion regarding Griep's BAC. To arrive at his conclusion, Harding relied on his review of data collected by Kalscheur, other records compiled at the laboratory, and his own expertise. Pointing to Harding's lack of personal knowledge of Kalscheur's testing of Griep's blood sample, Griep argues that Harding's opinion could not have been independent. However, we held in Williams, and the court of appeals held in Barton, that it was acceptable that the analyst's report, data, and notes were the factual bases of the expert witness's opinion, in addition to the witness's own professional expertise. Williams, 253 Wis. 2d 99, ¶25; Barton, 289 Wis. 2d 206, ¶13. Williams and Barton conclude that an expert witness need not have personal knowledge of the forensic tests, as long as the witness's opinion is reached independently and is not merely a recitation of another's conclusions. See Williams, 253 Wis. 2d 99, ¶25; Barton, 289 Wis. 2d 206, ¶¶13, 16. In each case, the expert witness rendered an independent opinion by reviewing data and notes from the analyst and the expert testified as to the

34

general procedures for preparing and testing samples.[24] Williams, 253 Wis. 2d 99, ¶25; Barton, 289 Wis. 2d 206, ¶14. Harding conducted the same type of review and based his opinion on the same type of records and personal expertise as the expert witness did in Williams and Barton, and his opinion is similarly independent.

¶56 Harding reviewed Kalscheur's test results and other relevant laboratory records and he testified as to his independent opinion. In accordance with Williams and Barton, Harding's testimony did not violate Griep's right of confrontation. Williams, 253 Wis. 2d 99, ¶26; Barton, 289 Wis. 2d 206, ¶20.

### III. CONCLUSION

¶57 We conclude that Harding's review of Griep's laboratory file, including the forensic test results of an analyst who was unavailable for trial, to form an independent opinion to which he testified did not violate Griep's right of confrontation. Williams, 253 Wis. 2d 99, ¶26; Barton, 289 Wis. 2d 206, ¶20. Accordingly, we affirm the court of appeals

---

[24] In Barton, the expert testified as to both the general laboratory procedures and, after review of the data and notes, that the analyst seemed to have followed the general procedures. Barton, 289 Wis. 2d 206, ¶¶13-14. Here, Harding stated that "all indications are that the procedures were followed, the instrument was operating properly, properly calibrated." This statement is within the bounds of an accepted assessment of the analyst's procedures as in Barton.

decision that affirmed the circuit court's admission of Harding's testimony.

*By the Court.*—The decision of the court of appeals is affirmed.

¶58 DAVID T. PROSSER, J., withdrew from participation.

¶59 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* The United States Supreme Court has not yet defined the contours of the limitations imposed by the Confrontation Clause on forensic evidence and expert testimony. The fractured decisions of the Court in this field may be an omen of changes to come in Confrontation Clause jurisprudence.[1]

¶60 In the meantime, however, federal and state courts must determine how the Confrontation Clause applies to forensic evidence and expert testimony.[2] At present, federal and state cases are all over the map in their attempts to apply the Court's Confrontation Clause decisions.

¶61 As courts develop and apply this evolving body of law, the "ultimate goal" of the Confrontation Clause must be remembered: To ensure that the reliability of evidence is "assessed in a particular manner," namely "by testing in the

---

[1] See, for example, Williams v. Illinois, 132 S. Ct. 2221 (2012), in which four opinions were filed but none received a majority vote. "The persistent ambiguities in the Court's approach are symptomatic of a rule not amenable to sensible applications." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2726 (2011) (Kennedy, J., dissenting). See also People v. Lopez, 286 P.3d 469, 483 (Cal. 2013) (Liu, J., dissenting) ("Given the array of possible doctrinal approaches left open by Williams, one can only surmise that the high court will soon weigh in again.").

[2] See State v. Deadwiller, 2013 WI 75, ¶47, 350 Wis. 2d 138, 834 N.W.2d 362 (Abrahamson, C.J., concurring) ("[T]he majority opinion does not help answer the recurring significant central constitutional/evidentiary question presented, namely, 'How does the Confrontation Clause apply to the panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians?'").

1

crucible of cross-examination."[3] The majority opinion seems to lose sight of this goal. I write separately to bring the goal of the Confrontation Clause back into focus.

¶62 In <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004), the United States Supreme Court declared that the Confrontation Clause bars the introduction of out-of-court testimonial statements unless the declarant is unavailable for trial and the declarant has previously been cross-examined by the defendant. The application of this fundamental Confrontation Clause principle in the context of forensic evidence and expert testimony has been the subject of much debate and litigation in state and federal courts.

¶63 In Wisconsin, a forensic report regarding a particular defendant that is created for prosecutorial purposes is considered an out-of-court testimonial statement.[4] It is clear under <u>Crawford</u> that such a report cannot be introduced into evidence without testimony from the analyst who prepared it unless the analyst is unavailable and was previously cross-examined by the defendant.

¶64 Ambiguity remains regarding the precise circumstances under which the Confrontation Clause permits the introduction of substitute expert testimony about forensic test results when the forensic report itself is not introduced.

---

[3] <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004).

[4] <u>State v. Williams</u>, 2002 WI 58, ¶¶48-49, 253 Wis. 2d 99, 644 N.W.2d 919.

2

¶65 In State v. Williams, 2002 WI 58, 153 Wis. 2d 99, 644 N.W.2d 919, this court established that the Confrontation Clause does not allow the State to call a surrogate expert to the witness stand simply to have the expert read or summarize a forensic report authored by someone else. The court held that "one expert cannot act as a mere conduit for the opinion of another" without violating the defendant's constitutional right to confront the State's witnesses.[5]

¶66 Similarly, in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), in which the certified results of a blood alcohol test were introduced with testimony from "a scientist who did not sign the certification or perform or observe the test reported in the certification," the United States Supreme Court "bluntly held that such 'surrogate' expert testimony violates the confrontation right. The accused's right is to confront the lab analyst who performed the test, unless the state can show that [the lab analyst] is unavailable and that [the] defendant had an opportunity pretrial to cross-examine him."[6]

¶67 In the present case, the State obtained a testimonial forensic report that concludes the defendant's blood alcohol content was 0.152 percent. The analyst who prepared the forensic report was unavailable for trial. The analyst had not,

---

[5] Id., ¶19.

[6] 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 802.303, at 142 (3d ed., 2014 Pocket Part).

however, been cross-examined by the defendant previously. Thus, the forensic report itself could not be introduced.

¶68 The State did not introduce the forensic report. Instead, the State called Patrick Harding, an employee in the same laboratory in which the forensic analysis was conducted, as a substitute expert witness to testify in lieu of the analyst who prepared the report.

¶69 Harding had no personal connection with the forensic report at issue. He had not observed the defendant's blood sample and had not participated in its testing. Harding nevertheless testified about the subject matter of the forensic report and testified that in his opinion, the defendant's blood alcohol content was 0.152 percent.

¶70 The majority opinion distinguishes the instant case from prior United States Supreme Court cases in which the Confrontation Clause was held to have been violated on the ground that the State in the instant case did not introduce an out-of-court testimonial statement. According to the majority opinion, although Harding's opinion was based on the analyst's out-of-court testimonial statement, it nevertheless qualifies as independent.

¶71 Crawford does not govern the introduction of testimony based on an out-of-court testimonial statement; it governs the introduction of the out-of-court testimonial statement itself. Thus, the majority opinion reasons, there was no Confrontation Clause violation in the instant case.

4

¶72 I disagree with the majority opinion's analysis. It is a stretch, in my view, to call Harding's opinion independent. I conclude that Harding served as a conduit for the opinion of the analyst who performed the forensic testing at issue. In my opinion, the analyst's out-of-court testimonial statement was introduced——albeit indirectly——through Harding's testimony.

¶73 Under a strict reading of Crawford, Harding's testimony violated the defendant's Confrontation Clause rights because the analyst whose out-of-court testimonial statement Harding indirectly introduced had not previously been cross-examined by the defendant. I conclude, however, that such a narrow reading of Crawford and its progeny improperly ignores the values underlying the Confrontation Clause and the practical realities the State and the courts face in cases that rely on forensic evidence. It also fails to take into account the reliability of forensic evidence and fails to give proper weight to the goal of enabling the State to prosecute a crime when a fair trial is possible.

¶74 In my opinion, courts should search for fair, practical, and workable evidentiary rules and should not deem the Confrontation Clause violated whenever the prosecution fails to call to the witness stand all whose testimony may be relevant to the accuracy of the forensic testing at issue in a particular case.

¶75 Keeping the majority, plurality, and minority writings of the justices of the United States Supreme Court in Crawford and its progeny in mind, and seeking the best interpretation of

the law available in light of the authorities binding upon this court, I conclude that the substitute expert testimony at issue in the instant case satisfies the Confrontation Clause.

I

¶76 I begin by examining the majority opinion's determination that Harding testified to an independent opinion and was not merely a conduit for the opinion of the analyst who performed the forensic testing at issue.[7]

¶77 State v. Williams, 2002 WI 58, ¶¶25-26, 253 Wis. 2d 99, 644 N.W.2d 919, held that an expert witness other than the analyst who performed the forensic testing at issue can testify to "an independent expert opinion" without violating the Confrontation Clause, even when that opinion is based in part "on facts and data gathered by someone else." Whether the opinion provided by such a substitute expert witness is an independent one must be determined on a case-by-case basis.

¶78 Independence is a question of degree. Williams does not reveal the precise degree of independent judgment that must undergird an expert's opinion for a court to characterize the opinion as independent for Confrontation Clause purposes.

¶79 It is clear, however, that for purposes of the Confrontation Clause, a substitute expert witness must do more than merely recite or summarize the work of another.[8] Consequently, the fact that the forensic report itself was not

---

[7] See majority op., ¶¶3, 46-47, 52, 55-57.

[8] Williams, 253 Wis. 2d 99, ¶19.

introduced in the present case is not dispositive. "The question is not whether [the forensic report] is disclosed in documentary form, or orally recapitulated by a testifying expert. Rather, the appropriate question is whether the substance of the testimonial materials is shared with the fact-finder to suggest its truth, without the report's author being available for cross-examination."[9]

¶80 In the present case, Harding testified that he was offering an independent opinion. Harding's characterization of his testimony is not binding on the court and is not supported by the record.

¶81 Harding stated at trial that he reviewed the analyst's "report when it went out and that is the chromatograms and the paperwork associated with the whole analytical run that [the analyst] did."

¶82 Harding was familiar with the policies and procedures of the laboratory in which the forensic analysis took place. He testified that all indications were that standard laboratory procedures were followed and that the chromatograph machine was properly calibrated.

¶83 Harding did not, however, have any first-hand knowledge that the procedures were followed in the present case. Harding was unable to testify about the handling of the defendant's blood sample or the steps that preceded the chromatograph machine's analysis of that sample. Harding had no

---

[9] David H. Kaye et al., The New Wigmore: Expert Evidence, § 4.10.2, at 200 (2d ed. 2010).

knowledge of the labeling or loading of the defendant's blood sample and had no knowledge of the sample's appearance or odor upon arrival at the laboratory. Harding made no direct observations of the sample or its testing. Harding could not testify about whether there was human error in the process of testing the defendant's blood sample.

¶84 In sum, Harding was unable to say whether the blood sample was received intact or whether the blood alcohol content testing was performed according to protocol. "These are the kinds of facts that mattered to the Bullcoming Court."[10]

¶85 Harding's only basis for determining the defendant's blood alcohol content was the analyst's report and supporting documentation. Harding did not, and could not, offer any different or additional analysis beyond that contained in the forensic report and attached materials. Harding had no greater connection with the specific forensic testing at issue than any other qualified forensic analyst from Harding's lab would have had.

¶86 The documents and information Harding reviewed were not, in my view, sufficient to enable Harding to independently "understand, interpret, and evaluate the [forensic test] results."[11] I conclude that for purposes of the Confrontation Clause, Harding lacked sufficient information to provide an

---

[10] Kaye et al., supra note 9, § 4.12.4, at 69 (Cumulative Supp. 2015).

[11] Kaye et al., supra note 9, § 4.10.2, at 205.

independent opinion about the defendant's blood alcohol content. Harding was, in essence, a conduit through which the State entered another analyst's otherwise inadmissible opinion into evidence.

¶87 My position that Harding failed to provide an independent opinion is supported by the United States Supreme Court's reasoning in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).

¶88 In Bullcoming, the United States Supreme Court debunked the notion that an analyst who performs a blood alcohol content test is a "mere scrivener," cross-examination of whom serves no legitimate purpose. Bullcoming makes clear that the analyst who tested the defendant's blood sample has valuable information about the test results beyond the information set forth in the materials produced by the gas chromatograph machine. Thus, the opportunity to cross-examine the analyst is important.

¶89 The Bullcoming Court explained that "[s]everal steps are involved in the gas chromatograph process, and human error can occur at each step."[12] According to the Court, the results produced by the gas chromatograph process are determined in part by "past events and human actions," which are not "revealed in

---

[12] Bullcoming, 131 S. Ct. at 2711.

raw, machine-produced data," and which constitute "me[a]t for cross-examination."[13]

¶90 In other words, according to the Bullcoming Court, an analyst's testifying and submitting to cross-examination at trial are not hollow formalities. The Court recognized that a substitute expert witness cannot convey all that the analyst who performed the forensic testing knows or observed and cannot expose any lapses on the analyst's part.[14] Thus, the analyst should be subject to confrontation even "if all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa."[15]

¶91 Similarly, Melendez-Diaz stresses that a substitute expert witness who testifies based solely on the results of the gas chromatograph process will have little to no knowledge of the past events and human actions that helped determine those results. As a result, cross-examination of the substitute expert witness cannot effectively uncover mistakes or misconduct by the analyst, which can render the results of the gas chromatograph process unreliable.

¶92 In Melendez-Diaz, the Court acknowledged that "[f]orensic evidence is not uniquely immune from the risk of

---

[13] Id. at 2714. By contrast, the dissent in Bullcoming emphasized the mechanical nature of the gas chromatograph. See Bullcoming, 131 S. Ct. at 2724 (Kennedy, J., dissenting).

[14] Bullcoming, 131 S.Ct. at 2715-16.

[15] Melendez-Diaz, 557 U.S. 305, 319 n.6 (2009). See also Bullcoming, 131 S. Ct. at 2715.

10

manipulation."[16]  Mistake or misconduct can influence forensic test results.[17]  "A forensic analyst responding to a request from a law enforcement official may feel pressure——or have an incentive——to alter the evidence in a manner favorable to the prosecution."[18]

¶93 Harding appears to have recognized the dangers posed by admitting his testimony in lieu of testimony by the analyst who performed the forensic testing in question.  On cross-examination, defense counsel asked Harding whether the analyst who tested the defendant's blood sample could have tampered with the sample had she "had a mind to do it."  Harding responded: "[I]f an analyst wanted to do something nefarious, sure, that's correct, that could happen."  Defense counsel then asked whether an analyst's tampering with a blood sample "could possibly escape your detection when you review the written reports and materials."  Harding replied: "Sure."

¶94 This colloquy demonstrates the inherent limits to what an expert can know about gas chromatography testing performed by someone else.  Because of these limits, a substitute expert witness can do little more than summarize the work and parrot

---

[16] Melendez-Diaz, 557 U.S. at 318.

[17] Indeed, according to an amicus brief submitted in the instant case by the Innocence Network, "[u]nvalidated or improper forensic science is a leading cause of wrongful convictions, playing a role in the cases of almost half of the 321 wrongfully convicted people in the United States who have been exonerated by DNA testing."

[18] Melendez-Diaz, 557 U.S. at 318.

the findings of the analyst who performed the testing. Harding was no different; he summarized the work and parroted the findings of the analyst who performed the forensic testing at issue.

¶95 In sum, a careful reading of case law and of Harding's testimony reveals that Harding was unable to testify about the gas chromatograph process at issue other than by relying on, and disclosing the substance of, materials generated by another analyst's use of the gas chromatograph machine.

¶96 The State called Harding as a witness in order to introduce the otherwise inadmissible conclusion of a testimonial forensic report prepared by someone else. Harding could not provide insight into the testing process other than by disclosing the substance of the report itself. Under the circumstances of the present case, Harding did not provide an independent opinion. The values underlying the Confrontation Clause would be better protected by testimony from, and cross-examination of, the analyst who prepared the report.

II

¶97 In my view, a defendant's Confrontation Clause rights must be balanced against the practical reality that cross-examining the forensic analyst who performed the testing at issue will not always be possible or necessary. Courts should not——and need not under current United States Supreme Court precedent——exclude forensic evidence that has indicia of reliability when the analyst who performed the testing is unavailable but a substitute expert witness is available to

12

provide useful and significant information about that evidence and to submit to cross-examination.[19]

¶98 Thus, although I conclude that Harding's testimony indirectly introduced an out-of-court testimonial statement made by an unavailable analyst who had not previously been cross-examined, and although I conclude that the Confrontation Clause would be better protected by testimony from, and cross-examination of, the analyst who conducted the forensic testing at issue, my analysis does not end there.

¶99 As Justice Kennedy's dissent in Bullcoming explains, the United States Supreme Court lacks the experience and familiarity with state trial processes necessary to make it well-suited for the role of a national tribunal for rules of evidence.[20]  Accordingly, this court should contribute to the development of evidentiary rules that pay heed to the constitutional and practical concerns of state courts, the State, and defendants.  The instant case presents the court with the opportunity to do just that.

¶100 When an analyst becomes unavailable without first submitting to cross-examination by the subject of the analyst's forensic testing, what happens to the results produced by that

---

[19] "Thus, when there is both unavailability and a meaningful but imperfect substitute for contemporaneous cross-examination, the Constitution, according to Crawford, does not require wholesale exclusion. . . .    [N]ecessity ought to permit a second-best solution."  Kaye et al., supra note 9, § 4.12.2, at 66-67 (Cumulative Supp. 2015).

[20] Bullcoming, 131 S. Ct. at 2727 (Kennedy, J. dissenting).

testing? If Crawford imposes a rigid, wholesale ban on non-independent substitute expert testimony about forensic test results when an unavailable forensic analyst has not previously been cross-examined, how could the results be introduced? In short, they could not.

¶101 It seems to me, however, that Crawford does not dictate such rigidity. I reach this conclusion based on Crawford itself (which recognizes that the opportunity to cross-examine a witness at trial is not always possible or necessary[21]) and on Crawford's progeny.

¶102 The separate writings issued in Bullcoming are particularly instructive.

¶103 Justice Sotomayor's concurrence in Bullcoming makes clear that the Court "would face a different question [than faced in Bullcoming and prior cases] if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements

---

[21] Under Crawford, a prior opportunity to cross-examine an unavailable witness provides a constitutionally adequate alternative to cross-examination of the witness at trial.

were not themselves admitted as evidence."[22]  That is the very question presented in the instant case.[23]

¶104 Justice Sotomayor emphasized that Bullcoming should be read narrowly.  Justice Sotomayor wrote that Bullcoming and prior cases would not control future cases in which "the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."[24]

¶105 Justice Sotomayor did not explain the level of involvement a substitute witness must have with the "scientific test at issue" to render the witness's testimony permissible under the Confrontation Clause.  However, the implication of Justice Sotomayor's Bullcoming concurrence is that if a substitute expert witness testifies who has even a limited connection to the testing at issue, there might not be any Confrontation Clause violation:

> [In Bullcoming, the analyst] conceded on cross-examination that he played no role in producing the

---

[22] Bullcoming, 131 S. Ct. at 2722 (Sotomayor, J., concurring).

[23] Justice Sotomayor discusses Federal Rule of Evidence 703, explaining that facts and data upon which experts in a given field would reasonably rely in forming an opinion need not be admissible in order for an expert opinion based on such facts and data to be admitted.  There is, however, an argument to be made that despite Rule 703, evidence that is excluded from trial on constitutional grounds ought not to be permitted to serve as part of the basis for an expert's conclusion.  See Kaye et al., supra note 9, § 4.5, at 158.

[24] Bullcoming, 131 S. Ct. at 2722 (Sotomayor, J., concurring).

15

BAC report and did not observe any portion . . . of the testing. . . . It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the result or a report about such results. We need not address what degree of involvement is sufficient because here [the analyst] had no involvement whatsoever in the relevant teat and report.[25]

¶106 The four dissenting justices in <u>Bullcoming</u> objected to the <u>Bullcoming</u> majority's extension of <u>Melendez-Diaz</u>. According to the dissenters, <u>Melendez-Diaz</u> does not prohibit the introduction of a testimonial forensic report when a knowledgeable representative of a laboratory is "present to testify and to explain the lab's processes and the details of the report."[26] Nor, in the dissenters' view, does the Confrontation Clause.

¶107 The dissent reasons that a blood alcohol content analysis "is mechanically performed by the gas chromatograph, which may operate . . . after all the laboratory employees leave for the day."[27] Under these circumstances, the dissent concludes, the introduction of a forensic report along with the testimony of a knowledgeable laboratory representative who is available for cross-examination is "fully consistent with the Confrontation Clause and with well-established principles for ensuring that criminal trials are conducted in full accord with

---

[25] <u>Id.</u>

[26] <u>Id.</u> at 2723 (Kennedy, J., dissenting).

[27] <u>Id.</u> at 2724 (Kennedy, J., dissenting).

16

requirements of fairness and reliability and with the confrontation guarantee."[28]

¶108 Keeping these and other post-Crawford writings of the justices of the United States Supreme Court in mind, and seeking the best interpretation of the law available in light of the authorities binding upon this court, I conclude that the substitute expert testimony at issue in the instant case satisfies the Confrontation Clause.

¶109 More specifically, I conclude that in the instant case, cross-examination of a substitute expert witness who fails to provide an independent opinion constitutes a permissible alternative to cross-examination of the analyst who performed the forensic testing at issue when the following conditions are met:

1.  The analyst is unavailable for cross-examination, through no fault of the parties;

2.  Re-testing is not possible;

3.  The analyst recorded the forensic test results at or near the time of testing in the course of a regularly conducted activity and would be unlikely to have an independent memory of the test performed (because, for example, the analyst processed many such tests within a short period);

---

[28] Id. at 2723 (Kennedy, J., dissenting).

4. The analyst recorded the results in a way that another expert in the field could understand and interpret; and

5. The substitute expert witness is qualified to discuss and interpret the original results and is subject to cross-examination.

¶110 Because these conditions appear to have been met in the present case, I conclude that Harding's substitute expert testimony fulfills the minimum requirements of the Confrontation Clause. Thus, like the majority opinion, I would allow it.

¶111 I note, finally, that in determining that Harding's testimony is permissible under the Confrontation Clause, I am cognizant of "the fundamental doctrinal dilemma" underlying the relationship between the Confrontation Clause and forensic evidence:

> [T]here is a fundamental mismatch between the Confrontation Clause's focus on the individual testifying expert and the nature of scientific knowledge production, which is, more often than not, a collective rather than an individual enterprise. Science often depends on a certain degree of epistemic deference to the conclusions and findings of others . . . and scientists are often engaged in "distributed cognition" in which [] the knowledge relevant to a [particular] question . . . stretches across a network of humans and machines. . . . [W]hen a witness uses only a modicum of independent judgment to evaluate and opine on tests done by others, this problem of distributed knowledge and the Confrontation Clause rears its head.[29]

¶112 For the reasons set forth, I write separately.

---

[29] Kaye et al., supra note 9, § 4.12.11, at 100 (Cumulative Supp. 2015) (footnotes omitted).

¶113 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.