******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.* HORVIL F. LEBRICK
(AC 39980)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

Convicted of the crimes of felony murder, home invasion, conspiracy to commit home invasion, burglary in the first degree, attempt to commit robbery in the first degree and assault in the first degree in connection with the shooting death of the victim, the defendant appealed. He claimed, inter alia, that the trial court improperly admitted into evidence the former testimony of a witness, P, who testified at the defendant's probable cause hearing. The defendant also claimed that the court improperly permitted the testimony of a firearm and tool mark expert, S, who testified at trial regarding the ballistic evidence collected at the crime scene. *Held*:

1. The defendant could not prevail on his claim that the former testimony of P was inadmissible hearsay because the state failed to establish that P was unavailable and, thus, P's testimony did not fall within the exception to the hearsay rule set forth in § 8-6 (1) of the Connecticut Code of Evidence: the trial court did not abuse its discretion in admitting the challenged testimony, which involved substantially similar issues to those at the defendant's trial, as the record demonstrated that the defendant had a full and fair opportunity to cross-examine P about her testimony at the probable cause hearing, and the state made a good faith effort to locate P by attempting to contact P at her last known address and phone number found in the case file and searching multiple computer databases in order to locate P, which was unsuccessful; moreover, the defendant's claim that the admission of P's former testimony violated his constitutional right to confrontation was unavailing, as P was unavailable to testify at trial and the defendant had a full and fair opportunity to cross-examine her at the probable cause hearing regarding her testimony.

2. The defendant's unpreserved claim that the trial court improperly admitted S's testimony in violation of § 4-1 of the Connecticut Code of Evidence because the state failed to establish the relevancy of S's testimony by providing a sufficient evidentiary foundation that the photographs, report, and notes relied on by S were associated with the crimes at issue in the present case was not reviewable, the defendant having failed to raise before the trial court the particular relevancy objection that he asserted on appeal; moreover, even though S's opinion was formulated in part by his review of a ballistic report prepared by a former employee of the state's forensic laboratory who was not available to testify at trial, there was no merit to the defendant's claim that his constitutional right to confrontation was implicated by the admission of S's opinion testimony because, even if the ballistic report contained testimonial hearsay, the state did not seek to introduce the ballistic report or any statement or opinion by the former employee regarding the ballistic evidence through S, who was available for cross-examination at trial regarding his own scientific conclusions and the factual basis underpinning his opinion, and, thus, the defendant was afforded a full opportunity to confront the declarant of the actual scientific conclusions admitted against him.

Argued October 12, 2017—officially released January 16, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of felony murder, home invasion, conspiracy to commit home invasion, burglary in the first degree, conspiracy to commit burglary in the first degree, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, and assault in the first degree, brought to the Superior Court in the

judicial district of Hartford, and tried to the jury before *Dewey, J.*; thereafter, the court denied the defendant's motions to preclude certain evidence; verdict and judgment of guilty; subsequently, the defendant's conviction of conspiracy to commit burglary in the first degree and conspiracy to commit robbery in the first degree was vacated, and the defendant appealed. *Affirmed.*

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *John F. Fahey* and *Robert Diaz*, senior assistant state's attorneys, and *Allen M. Even*, certified legal intern, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Horvil F. Lebrick, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes (Rev. to 2009) § 53a-54c, home invasion in violation of General Statutes §§ 53a-100aa (a) (2) and 53a-8, conspiracy to commit home invasion in violation of General Statutes §§ 53a-100aa (a) (2) and 53a-48 (a), burglary in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-101 (a) (1), conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-101 (a) (1), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-49 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48 (a), and assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8.[1]

The defendant claims on appeal that the trial court improperly admitted into evidence (1) former testimony of a witness in violation of § 8-6 (1) of the Connecticut Code of Evidence and the confrontation clause of the sixth amendment to the United States constitution, and (2) testimony by the state's firearm and tool mark expert in violation of § 4-1 of the Connecticut Code of Evidence and the confrontation clause of the sixth amendment to the United States constitution. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts on the basis of the evidence presented at trial. On the morning of May 6, 2010, the defendant and his twin cousins, Andrew and Andraw Moses, were driven by an unidentified fourth man in a Ford Econoline van from New York to an apartment building located at 115 Nutmeg Lane in East Hartford. One of the apartments in that building was rented by Omari Barrett, a purported drug dealer, whom the defendant and the twins intended to rob. When they arrived at the apartment building, the defendant and the twins, who were dressed in workmen's clothes and hard hats, exited the van, entered the building, and knocked on the door of Barrett's third floor apartment. When no one answered after repeated knocking, the defendant kicked open the door, and he and the twins entered the apartment. All three were armed with guns.

Barrett's girlfriend, Shawna Lee Hudson, was alone in the small, two bedroom apartment at that time. She did not open the door when she heard knocking, but instead telephoned Barrett. Barrett told Hudson that he was not expecting any workers and hung up the phone. Hearing someone trying to force entry, Hudson called Barrett back, and he told her to get the .357 magnum revolver that was in the apartment. Barrett ended the call and proceeded to drive to the apartment

armed with a nine millimeter revolver. Hudson called him a third time as he was driving and conveyed that the men were in the apartment and that she was hiding in the bedroom closet. As Barrett arrived, he heard on the phone someone saying, "Where's the money? Shut the fuck up," at which point the call ended.

Barrett ran into the building to the apartment, noticing as he approached that the door was open and appeared to have been kicked in. Barrett entered the apartment and immediately encountered the twins, whom he fatally shot. Barrett then called out to Hudson, who was in the bedroom with the defendant, and asked her how many more people were in the apartment. She said that there was one more. The defendant and Barrett then engaged in a gunfight in which Barrett was shot once in the leg and once in the arm. Barrett retreated from the apartment into the hallway to an alcove by the elevators. He next heard a single gunshot and saw the defendant exit the apartment and flee in the opposite direction down the hallway. Running back into the apartment, Barrett found Hudson, who had been shot once in the chest.

Both Hudson and the twins were pronounced dead at the scene. The police collected numerous bullets and shell casings from in and around the apartment. The only firearm recovered at the scene was a .45 caliber automatic. The police also found an oil change receipt for an Econoline van. That receipt helped the police to identify the defendant as a suspect, and he subsequently was arrested and charged.

Following a jury trial, the defendant was convicted on all charges.[2] He was later sentenced by the court, which imposed a total effective sentence of ninety years of incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence the former testimony of a material witness, Keisha Parks, who testified at the defendant's probable cause hearing in this matter. The defendant's arguments in support of that claim are twofold. First, he argues that Parks' former testimony was inadmissible hearsay because it did not fall within the exception to the hearsay rule set forth in § 8-6 (1) of the Connecticut Code of Evidence in light of the state's failure to properly establish that Parks was unavailable for trial, a necessary prerequisite to the exception's applicability. Second, he argues that the admission of the former testimony violated his rights under the confrontation clause of the sixth amendment of the United States constitution, citing *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We disagree with both arguments.

The following additional facts are relevant to our

resolution of this claim. Parks was the fiancée of Andrew Moses, one of the defendant's twin cousins. She reluctantly testified at the defendant's probable cause hearing on November 10, 2010. Among other things, she testified about a conversation that she had with the defendant in the early evening of May 6, 2010, in which he implicated himself in the events that transpired that same day at the apartment in East Hartford. The defendant was represented by counsel at the probable cause hearing, and defense counsel extensively cross-examined Parks about her testimony.

On March 5, 2014, the defendant filed a motion asking the court to preclude the state from offering Parks' probable cause testimony as evidence at trial. The defendant argued that Parks' former testimony was hearsay and testimonial in nature and, thus, was admissible only if the state could show that Parks was unavailable and that the defendant had had a full and fair opportunity to cross-examine her. The defendant argued that the state had the burden of demonstrating Parks' unavailability, including that it made a good faith effort to procure her attendance for trial.

On October 16, 2014, during the trial but outside the presence of the jury, the court heard testimony from the following two witnesses concerning the state's effort to locate Parks for trial: Henry Hightower, a police inspector with the state's criminal justice division, and Frank Garguilo, an investigator with the Brooklyn District Attorney's Office. Hightower testified that the case file contained Parks' last known address and phone number. Hightower called the telephone numbers listed in the case file for Parks but received no answers. He also ran Parks' name and birthdate through several computer database searches. Specifically, he utilized the Hartford Police Department's in-house computer; National Crime Information Center, a national database utilized by the Connecticut State Police to run criminal background checks; and CLEAR, a database that searches publicly available data within a specified state. The CLEAR search was the only one that produced any results, listing several phone numbers and addresses in New York associated with Parks as of 2013. Hightower e-mailed the Brooklyn District Attorney's Office with the most current phone numbers and addresses he could find for Parks, and asked the office to send an investigator to check those addresses and to serve Parks with an interstate summons to appear for trial.

Garguilo testified that the Brooklyn District Attorney's Office assigned him with the task of serving the summons on Parks. He checked the addresses provided by Hightower; he visited the addresses, sometimes twice in one day, but no one answered at any of the locations. Garguilo also called the telephone numbers provided to him and left messages on some answering machines, but got no return response. Garguilo was

never asked to conduct an independent investigation into Parks' whereabouts, and he did not do so. Ultimately, neither Hightower nor Garguilo was able to locate Parks.

After hearing from the state's witnesses, the court heard argument from the parties. The state maintained that the efforts described by Hightower and Garguilo demonstrated that the state exercised reasonable due diligence in locating Parks to secure her testimony for trial. The defendant, on the other hand, took the position that the state's efforts fell far short of meeting its burden of showing the necessary good faith effort to procure Parks' attendance. The defendant referenced our decision in *State* v. *Wright*, 107 Conn. App. 85, 943 A.2d 1159, cert. denied, 287 Conn. 914, 950 A.2d 1291 (2008), both for the proposition that the state must show *substantial* due diligence and as an example of what has qualified previously as a reasonable effort to locate a witness. See id., 90–92. The defendant pointed out that the state had failed to conduct any searches of social media websites, to look for driver's license information in New York, or to access social security information to use as an additional search criterion. The defendant also argued that no effort was made to speak to a landlord or neighbors at the addresses visited by Garguilo in order to determine whether Parks currently lived at those locations or had moved. Finally, the defendant argued that although Hightower testified that he believed that information such as housing matters, civil protective orders and child support orders involving Parks should have been discovered as part of his search of the CLEAR system, he was unable to testify precisely about what information could be obtained by a search in CLEAR. The court reserved ruling on the motion at that time.

At the court's request, the state later presented additional testimony from a CLEAR product specialist employed by Thomson Reuters, Erin Tiernam, who had knowledge of how the CLEAR system operated. Tiernam testified that CLEAR was a subscription service used to search for people and that it acted as a data aggregator, pulling information from a number of public record sources. If a name and date of birth is entered, the system is designed to return credit histories, utility records, death records, records of court and property records. After hearing from Tiernam, the court ruled that it would allow the state to read the former testimony into the record.[3]

A

We first address the defendant's evidentiary claim that, because the state failed to meet its burden regarding Parks' unavailability, the court should have deemed her former testimony inadmissible hearsay. We are not persuaded.

We begin by discussing our standard of review. In considering the propriety of a court's evidentiary rulings, "the appropriate standard of review is best determined, not as a strict bright line rule, but as one driven by the specific nature of the claim." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility." Id. If, however, the court's decision to admit evidence is premised upon a correct view of the law, we review such decisions only for an abuse of discretion. Id.

It is undisputed in the present case that Parks' former testimony is properly classified as hearsay and, thus, inadmissible unless it satisfies the exception in § 8-6 (1) of the Connecticut Code of Evidence. The sole challenge here is to the unavailability of Parks, or, more precisely, whether the court properly determined that the state had exercised due diligence to locate and secure Parks' attendance at trial. Because that determination involved the court exercising its discretion to make a "judgment call," the proper standard of review is the abuse of discretion standard. See id.; see also *State* v. *Lopez*, 239 Conn. 56, 79, 681 A.2d 950 (1996) ("it is within the discretion of the trial court to accept or to reject the proponent's representations regarding the unavailability of a declarant and the trial court's ruling will generally not be disturbed unless the court has abused its discretion"). "[W]hen [appellate courts] review claims for an abuse of discretion, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 18, 878 A.2d 1103 (2005).

Turning to the applicable law, the Connecticut Code of Evidence § 8-6 provides in relevant part: "The following are not excluded by the hearsay rule *if the declarant is unavailable as a witness*: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. . . ." (Emphasis

added.) In the present case, there is no dispute that Parks' testimony at the defendant's probable cause hearing involved "substantially similar" issues as those at trial, particularly because both concerned the same substantive criminal charges. See *State* v. *Parker*, 161 Conn. 500, 503–504, 289 A.2d 894 (1971). Furthermore, the defendant had a full and fair opportunity to cross-examine the witness about her testimony at the probable cause hearing and, as reflected in the record, took advantage of that opportunity. Therefore, as we previously have indicated, the sole basis for the defendant's claim that the former testimony was inadmissible hearsay is his argument that the state failed to demonstrate Parks' unavailability for trial.

A declarant is deemed unavailable if he is "absent from the hearing [or trial] and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." (Internal quotation marks omitted.) *State* v. *Frye*, 182 Conn. 476, 481, 438 A.2d 735 (1980) (utilizing for state law purposes definition of unavailability contained in rule 804 of Federal Rules of Evidence). Our Supreme Court has interpreted "reasonable means" as requiring the proponent "to exercise due diligence and, at a minimum, make a good faith effort to procure the declarant's attendance." (Internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 62, 602 A.2d 571 (1992). Although our Supreme Court has stated that a good faith effort necessarily requires a showing of "substantial diligence"; *State* v. *Lopez*, supra, 239 Conn. 75; it has also explained that "[a] proponent's burden is to demonstrate a diligent and reasonable effort, *not to do everything conceivable*, to secure the witness' presence." (Emphasis added.) Id., 77–78. Therefore, an opponent's ability to point out additional yet unexplored avenues of investigation will not be dispositive of whether a proponent's efforts at locating a witness are deemed reasonable by a court.

In the present case, we agree with the defendant that the state's efforts to locate Parks were not exhaustive. That, however, is not the standard, nor will we substitute our own judgment for that of the trial court. The standard is whether the state made a good faith effort to locate Parks. Hightower, who was tasked with locating Parks for the state, attempted to find her by using her last known address and phone number found in the case file. When that was unsuccessful, he utilized Parks' name and birthdate to search several computer databases, most notably the CLEAR system. The CLEAR system searched for available public information regarding Parks, including civil and criminal matters in New York. The CLEAR search in fact returned additional addresses and telephone numbers associated with Parks. Hightower engaged the help of the district attorney's office in New York to try to initiate personal contact with Parks or Parks' mother at the addresses obtained from CLEAR and to serve a summons. The

assigned investigator from that office, Garguilo, made several attempts personally to visit the addresses provided and to make telephone calls, but was unsuccessful at making any contacts.

Although the defendant provides various additional steps or alternative avenues of investigation that the state might have utilized to locate Parks, including making some effort to speak with third parties to obtain her current whereabouts, the defendant has cited to no authority mandating that such actions are necessary in order to establish a good faith effort to locate a witness. "[T]he question of whether an effort to locate a missing witness has been sufficiently diligent to declare that person unavailable is one that is inherently fact specific and always vulnerable to criticism, due to the fact that one, in hindsight, may always think of other things." (Internal quotation marks omitted.) *State* v. *Miller*, 56 Conn. App. 191, 194, 742 A.2d 402 (1999), cert. denied, 252 Conn. 937, 747 A.2d 4 (2000). In *Miller*, the state's investigator in that case testified at trial that he had made unsuccessful efforts to contact three witnesses at their last known addresses on file several weeks prior to trial. Id., 194–95. This court concluded that the state had made a good faith effort to locate the witnesses and that the investigator's testimony was satisfactory to prove the witnesses' unavailability. Id., 195. The investigator in the present case did no less, and also attempted to find additional leads by utilizing the CLEAR database search. On the basis of this record, we cannot conclude that the court abused its discretion in finding, albeit implicitly, that the state met its burden of demonstrating Parks' unavailability.[4]

B

In addition to his evidentiary challenge, the defendant also argues that the admission of Parks' former testimony violated his rights under the confrontation clause of the sixth amendment to the United States constitution.[5] Citing to *Crawford* v. *Washington*, supra, 541 U.S. 36, the defendant contends in his brief that "[t]estimonial statements by witnesses who are not subject to cross-examination at trial may not be admitted unless the witness is unavailable and there has been a prior opportunity for cross-examination." Because both conditions were met in the present case, we are not persuaded that the defendant's rights under the confrontation clause are implicated.

"Beyond [applicable] evidentiary principles, the state's use of hearsay evidence against an accused in a criminal trial is [also] limited by the confrontation clause of the sixth amendment. . . . The sixth amendment to the constitution of the United States guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. This right is secured for defendants in state criminal proceedings. . . . [T]he primary interest secured by confrontation

is the right of cross-examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 712, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). "Traditionally, for purposes of the confrontation clause, all hearsay statements were admissible [under *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)] if (1) the declarant was unavailable to testify, and (2) the statement bore adequate indicia of reliability. . . . [In *Crawford* v. *Washington*, supra, 541 U.S. 68, however], the United States Supreme Court overruled *Roberts* to the extent that it applied to testimonial hearsay statements. . . . In *Crawford*, the court concluded that the reliability standard set forth in the second prong of the *Roberts* test is too amorphous to prevent adequately the improper admission of core testimonial statements that the [c]onfrontation [c]lause plainly meant to exclude." (Internal quotation marks omitted.) *State* v. *Kirby*, 280 Conn. 361, 379, 908 A.2d 506 (2006). Accordingly, the United States Supreme Court held that if "testimonial evidence is at issue . . . the [s]ixth [a]mendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford* v. *Washington*, supra, 68.

It is undisputed that Parks' testimony at the probable cause hearing was testimonial in nature and, thus, its admission at trial for the truth of the matters asserted implicated the test established in *Crawford*. See *State* v. *Skakel*, supra, 276 Conn. 714 (former probable cause hearing testimony "falls squarely within *Crawford*'s core class of testimonial evidence"). To the extent, however, that the defendant's constitutional challenge relies on the same assertion made in support of his evidentiary argument, namely, that the state failed to demonstrate that Parks was unavailable for trial, we again reject it.

Although a court's ultimate determination as to whether a statement is precluded under *Crawford* raises an issue of constitutional law that is subject to plenary review; see *State* v. *Kirby*, supra, 280 Conn. 378; the factual underpinnings of such a determination are entitled to significant deference. *State* v. *Swinton*, 268 Conn. 781, 855, 847 A.2d 921 (2004). Whether a witness is unavailable is such a factual determination. See *State* v. *Schiappa*, 248 Conn. 132, 141, 728 A.2d 466 (recognizing fact-bound nature of unavailability inquiry), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). In reviewing constitutional claims, our customary deference to the trial court's factual finding is "tempered by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Swinton*, supra, 855. Having conducted a scrupulous review of the record, we are convinced that the testimony of Hightower and Garguilo, as discussed in part I A of this opinion, constitutes substantial evidence that fully

supports the trial court's implicit findings that the state exercised due diligence to locate Parks, and that Parks was unavailable to testify.

Moreover, the record demonstrates that the defendant had a full and fair opportunity to cross-examine Parks regarding her testimony at the probable cause hearing, defense counsel vigorously cross-examined her at that time, and Parks' cross-examination was part of the testimony that was read back to the jury at trial. Because Parks was unavailable to testify at trial and the defendant had a full and fair opportunity to cross-examine her at the probable cause hearing regarding her testimony, his confrontation clause rights were not violated by the admission of her former testimony at trial.

## II

The defendant next claims that the court improperly permitted the testimony of James Stephenson, a firearm and tool mark expert who testified at trial regarding the ballistic evidence collected at the crime scene. The defendant's arguments in support of this claim are, again, twofold. First, he argues that the testimony was not relevant and, thus, admitted in violation of § 4-1 of the Connecticut Code of Evidence, and that this error was harmful. Second, he argues that the testimony violated his rights under the confrontation clause of the sixth amendment to the United States constitution. We disagree with both arguments.

The following additional facts and procedural history are relevant to this claim. Gerard Petillo, a former employee of the state's forensic laboratory, performed various tests on the ballistic evidence collected in this case and authored a report containing his findings and analysis. Unfortunately, prior to trial, Petillo passed away and, thus, was unavailable to testify regarding his report and its contents. Stephenson also worked for the state's forensic laboratory at the time that Petillo created the ballistic report in this case and acted as that report's technical reviewer and "second signer." Although the state informed the defendant that it did not intend to offer Petillo's report into evidence, it did indicate that it would offer testimony from Stephenson, who had agreed to testify on the basis of his review of the photographs and report prepared by Petillo regarding his own, independent conclusions.[6]

The defendant filed a motion to preclude Stephenson's testimony, arguing that Petillo's report was testimonial in nature and hearsay and, thus, that any testimony or evidence concerning that report would violate the defendant's constitutional rights as delineated in *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), and *Bullcoming* v. *New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). The defendant later supplemented his

motion, arguing that Stephenson lacked a proper foundation to render his own opinion in this matter because he had not personally performed any of the testing or measurement of the evidence and that "[p]ermitting Stephenson to testify about the adequacy and accuracy of tests he did not perform is nothing more than a means by which to present evidence of another witness that is not available." In support of this supplemental argument, the defendant cited to § 7-4 of the Connecticut Code of Evidence.[7]

The court held a hearing on the defendant's motion on October 27, 2014. At that time, the defendant renewed his objection based on the confrontation clause and raised, for the first time, an objection based on relevancy. With respect to his relevancy argument, the defendant asserted that he could not evaluate the relevancy of Stephenson's testimony because nothing had been proffered regarding that testimony and it was the defendant's understanding that Stephenson had not conducted his own independent testing but would rely upon information in Petillo's report.

The state argued that Stephenson would testify about the projectiles found at the crime scene. In particular, he would opine that the projectile found in Hudson's body and a shell casing recovered in her bedroom were inconsistent with the nine millimeter projectiles found in the twins' bodies and in other areas of the crime scene, suggesting that Hudson was killed by a different nine millimeter gun, presumably one fired by the defendant. Furthermore, the state argued that Stephenson's conclusions, although not any different than those reached by Petillo, would be his own and based on his independent evaluation of the information available. Stephenson would be subject to cross-examination as to those conclusions. Whatever materials or information he reviewed in reaching his conclusions also would be fodder for cross-examination.

The court denied the motion to preclude on the record, indicating to defense counsel that it was going to permit Stephenson to testify. The court explained that the defendant certainly could raise by way of cross-examination that Stephenson had not examined the actual projectiles himself, suggesting that the court may have believed that the defendant's objections to Stephenson's testimony went more to the weight of the evidence to the jury than to its overall admissibility.[8]

Before the jury, Stephenson testified consistent with the state's proffer. He never referred to the contents of Petillo's report, including Petillo's conclusions. Rather, he indicated only that he had reviewed a number of reports and photographs relating to evidence submitted to the state lab in preparation for his testimony and, based on his background, training and experience, he was able from that review to formulate his own opinion.

## A

We first dispose of the defendant's argument that the court improperly admitted Stephenson's testimony in violation of § 4-1 of the Connecticut Code of Evidence[9] because the state failed to establish the relevancy of Stephenson's testimony by providing a sufficient evidentiary foundation that the photographs, report, and notes relied on by Stephenson were associated with the crimes at issue in this case. The state argues, inter alia, that this evidentiary claim is unreviewable because it was never raised before the trial court. We agree with the state.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. [An appellate court] is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

The defendant never raised an issue of relevancy in his motion to preclude Stephenson's testimony but did argue relevancy in his argument before the court prior to Stephenson's testimony. That particular argument, however, was premised solely on the fact that the state had not yet made a proffer regarding Stephenson's trial testimony nor had the defense been provided with any report from Stephenson. The defendant asserted, therefore, that he could not yet evaluate the relevancy of Stephenson's testimony. After hearing from the state regarding the nature of Stephenson's testimony, however, the trial court overruled the defendant's objections and decided to allow Stephenson to testify. The defendant thereafter never raised the particular relevancy objection that he now asserts on appeal regarding whether the materials relied on by Stephenson were associated with the crimes at issue in this case. Because the defendant cannot be heard on an evidentiary claim that was never raised before or decided by the trial court, we decline to review this aspect of his claim on appeal.

## B

Finally, we turn to the defendant's argument that Stephenson's testimony was admitted in violation of the defendant's rights under the confrontation clause. The defendant argues that because Stephenson's testimony was based entirely on his review of Petillo's ballistic photographs and report, Petillo was, in effect, the

witness who the defendant had a right to confront. We are not persuaded that Stephenson's testimony violated the defendant's constitutional rights under the confrontation clause. We have already discussed the intersection between the confrontation clause and the admissibility of hearsay statements in criminal cases in part I B of this opinion. In short, hearsay statements that are deemed testimonial in nature are admissible in a criminal prosecution only if the declarant is both unavailable for trial and the defendant has had a prior opportunity to cross-examine the declarant regarding those statements. See *Crawford* v. *Washington*, supra, 541 U.S. 68.

"Two cases decided by the United States Supreme Court after *Crawford* apply the confrontation clause in the specific context of scientific evidence. In *Melendez-Diaz* v. *Massachusetts*, supra, 557 U.S. 310–11, the court held that certificates signed and sworn to by state forensics analysts, which set forth the laboratory results of the drug tests of those analysts and which were admitted into evidence in lieu of live testimony from the analysts themselves, were testimonial within the meaning of *Crawford*. In so concluding, the court reasoned that: (1) the certificates clearly were a sworn and solemn declaration by the analysts as to the truth of the facts asserted; (2) under Massachusetts law the sole purpose of the affidavits was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance; and (3) the court could safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves. . . . In *Bullcoming* v. *New Mexico*, [supra, 564 U.S. 652], the court held that the confrontation clause also does not permit the prosecution to introduce a forensic laboratory report containing a testimonial statement by an analyst, certifying to the results of a blood alcohol concentration test he performed, through the in-court testimony of another scientist who did not sign the certification or perform or observe the test reported in the certification." (Citation omitted; internal quotation marks omitted.) *State* v. *Buckland*, 313 Conn. 205, 213–14, 96 A.3d 1163 (2014), cert. denied,     U.S.    , 135 S. Ct. 992, 190 L. Ed. 2d 837 (2015). In short, an accused has the right "to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Bullcoming*, supra, 652.

*Melendez-Diaz* and *Bullcoming*, however, addressed only the admission of statements in forensic reports either without any accompanying testimony by the analyst or scientist that prepared them or through a surrogate who lacked direct involvement in the preparation of the report. Neither directly addressed the situation now presented, in which a potentially testimonial foren-

sic report is not itself offered or admitted into evidence, but rather was utilized by another expert witness to form an independent opinion. See id., 673 (*Sotomayor, J.*, concurring) ("[w]e would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence"). Although the United States Supreme Court had an opportunity to clarify this aspect of its confrontation clause jurisprudence in *Williams* v. *Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012), that case yielded multiple opinions by the court, none of which, for the reasons we explain, is controlling here.

The issue in *Williams* was whether a defendant's confrontation clause rights were violated by the admission of testimony from a police laboratory analyst who had reviewed and compared a DNA profile prepared by an outside laboratory from vaginal swabs taken from the victim and matched it with a DNA profile in the state's DNA database that was produced from a sample of the defendant's blood in an unrelated case. Id., 56–57, 59. The United States Supreme Court upheld the trial court's admission of the testimony. Id., 57–58. Although a majority of the court concluded that the expert's testimony did not violate the confrontation clause, they did not agree as to the rationale. A plurality of four justices, Justice Alito, joined by Chief Justice Roberts, Justice Kennedy, and Justice Breyer, concluded that the confrontation clause was not violated because the outside laboratory's report was not used to prove the truth of the matter asserted therein and, thus, was not hearsay. Id. Alternatively, those justices concluded that the report was not testimonial in nature because it was produced before any suspect was identified, and, thus, its primary purpose was not to obtain evidence to be used against the defendant. Id., 58. A fifth justice, Justice Thomas, agreed with the plurality's disposition of the case, and with its alternative conclusion that the report was not testimonial in nature.[10] Id., 103–104. In concluding that the report was not testimonial in nature, however, Justice Thomas focused on the report's lack of formality and solemnity, and specifically rejected the plurality's reliance on the "primary purpose test" to determine whether the report was testimonial in nature. Id., 111, 113–18. Thus, the plurality opinion and the opinion by Justice Thomas cannot be read together to provide one analytical path to employ in deciding whether a particular forensic report may be considered testimonial in nature.[11]

"When a fragmented [United States Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (Internal quotation marks

omitted.) *Marks* v. *United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). The *Marks* test has been explained by the United States Court of Appeals for the District of Columbia Circuit as follows: "[O]ne opinion can be meaningfully regarded as narrower than another—only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." (Internal quotation marks omitted.) *King* v. *Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991), cert. denied sub nom. *King* v. *Ridley*, 505 U.S. 1229, 112 S. Ct. 3054, 120 L. Ed. 2d 920 (1992). Given that no readily applicable rationale for the court's holding in *Williams* obtained the approval of a majority of the justices, its precedential value seems, at best, to be confined to the distinct factual scenario at issue in that case.[12] In any event, our ultimate resolution of the present appeal is not inconsistent with the overall result reached in *Williams*.

Turning to the present case, even assuming that Petillo's report contained testimonial hearsay,[13] there simply is no merit to the defendant's argument that his right to confrontation was implicated in the present case by the admission of Stephenson's opinion testimony, despite Stephenson's opinion having been formulated in part by his review of Petillo's ballistic report. As our Supreme Court indicated in *Buckland*, in *Crawford*, *Melendez-Diaz*, and *Bullcoming*, the court's violation of the defendant's confrontation rights occurred because it admitted certain inculpatory statements that were testimonial in nature and were made against the defendant by an individual who was absent at the trial. See *State* v. *Buckland*, supra, 313 Conn. 215–16. Those same circumstances simply are not present here. In the present case, the only inculpatory conclusion or statement regarding the ballistic evidence presented to the jury was made by Stephenson in court. At no point did the state seek to introduce Petillo's report or any statement or opinion by Petillo regarding the ballistic evidence through Stephenson. Stephenson obviously was fully available for cross-examination at trial regarding his own scientific conclusions and the factual basis underpinning his opinion. Indeed, defense counsel not only questioned Stephenson about the allegedly subjective nature of the science involved but was also able to reinforce to the jury the fact that Stephenson's opinion was not formulated on the basis of his own physical examination of the ballistic evidence, and was instead based on his review of photographs and information in other reports. The same attack on the reliability of Stephenson's opinion was repeated by the defense during closing arguments.

There is no dispute that an accused has the right to confront the analyst who states a conclusion drawn

from scientific evidence or certifies the results of scientific tests in a report prepared for trial because such statements qualify as testimonial statements subject to the confrontation clause as set forth in *Melendez-Diaz* and its progeny. To the extent, however, that, as in the present case, the defendant was afforded a full opportunity to confront the declarant of the actual scientific conclusions admitted against him, any claim of a confrontation clause violation simply is not persuasive.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's conviction of the charges of conspiracy to commit burglary in the first degree and conspiracy to commit robbery in the first degree was vacated.

[2] See footnote 1 of this opinion.

[3] In so ruling, the court made the following statement: "Well, the reason I had wanted to hear or put on the record information about CLEAR was because I realized after the hearing, I knew what it was, but there was no record of what it was. Now, with that on the record, I am going to allow the former testimony."

[4] Although the court did not provide specific factual findings or legal analysis regarding the state's efforts, by deciding to admit Parks' former testimony, it necessarily determined that the state had demonstrated sufficient and reasonable efforts to secure her availability for trial. Absent some indication to the contrary, we assume that the trial court acted properly in accordance with established legal principles. See *State* v. *Marrero*, 59 Conn. App. 189, 191–92, 757 A.2d 594, cert. denied, 254 Conn. 934, 761 A.2d 756 (2000).

[5] Although the state argues that this aspect of the defendant's claim is unpreserved and raised for the first time on appeal, we conclude that the defendant adequately raised the confrontation argument in his pretrial motion to exclude Parks' former testimony, which was adjudicated at trial.

[6] The state indicated on the record before the trial court that it began discussing Petillo's death and the possibility of Stephenson's testimony with the defense during jury selection. The state also explained that it had sought to have the forensic lab retest the evidence, but that the lab had indicated it would not be able to comply prior to trial.

[7] Section 7-4 of the Connecticut Code of Evidence provides in relevant part: "(a) Opinion testimony by experts. An expert may testify in the form of an opinion and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion.

"(b) Bases of opinion testimony by experts. The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. The facts relied on pursuant to this subsection are not substantive evidence, unless otherwise admissible as such evidence. . . ."

[8] The court did not state the factual or legal basis of its ruling on the record.

[9] Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

[10] Justice Thomas did not agree with the plurality's conclusion that the report was not hearsay because it was not offered for the truth of the matter asserted therein. *Williams* v. *Illinois*, supra, 567 U.S. 104.

[11] The four dissenting justices concluded that the expert testimony was "functionally identical to the surrogate testimony" in *Bullcoming* and that *Bullcoming* controlled the outcome. (Internal quotation marks omitted.) *Williams* v. *Illinois*, supra, 567 U.S. 124.

[12] Courts in a number of other jurisdictions have struggled with how to apply the *Williams* holding. See, e.g., *Washington* v. *Griffin*, Docket No. 15-3831-pr, 2017 WL 5707606, *9 (2d Cir. November 28, 2017) (noting that "neither of the plurality's rationales commanded a majority"); *State* v. *Michaels*, 219 N.J. 1, 31, 95 A.3d 648 ("[w]e find *Williams*'s force, as prece-

dent, at best unclear"), cert. denied,      U.S.      , 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014); *State* v. *Dotson*, 450 S.W.3d 1, 68 (Tenn. 2014) ("[t]he [United States] Supreme Court's fractured decision in *Williams* provides little guidance and is of uncertain precedential value because no rationale for the decision—not one of the three proffered tests for determining whether an extrajudicial statement is testimonial—garnered the support of a majority of the Court"), cert. denied,      U.S.      , 135 S. Ct. 1535, 191 L. Ed. 2d 565 (2015); *State* v. *Griep*, 361 Wis. 2d 657, 680, 863 N.W.2d 567 (2015) ("[a]s no opinion overlaps with another, the *Marks* narrowest grounds rule does not apply to [*Williams*]"), cert. denied,      U.S.      , 136 S. Ct. 793, 193 L. Ed. 2d 709 (2016).

[13] For purposes of our analysis, we will presume without deciding that the ballistic report prepared by Petillo in this matter, which was never introduced into evidence or otherwise made a part of the record in this case, contained certifications or other statements that would be deemed testimonial in accordance with *Crawford*. Although no appellate court in this state squarely has addressed the extent to which contents of a ballistic report are testimonial statements for purposes of confrontation clause analysis, courts in other jurisdiction have treated them as such. See, e.g., *Ayala* v. *Saba*, 940 F. Supp. 2d 18, 20 (D. Mass. 2013); *Conners* v. *State*, 92 So. 3d 676, 684 (Miss. 2012); *Miller* v. *Commonwealth*, Docket No. 1353-08-2, 2009 WL 2997079, \*2 (Va. App. September 22, 2009).

[14] Our conclusion is in accord with the decision of the Wisconsin Supreme Court, which considered a similar issue in *State* v. *Griep*, supra, 361 Wis. 2d 682–83, 691 (holding right of confrontation not violated where expert witness reviewed another analyst's forensic test results in forming independent opinion relayed at trial).