Filed 9/17/20  In re Genesis S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re GENESIS S., a Person Coming Under the Juvenile Court Law. | B303489 (c/w B305174) <br><br> (Los Angeles County Super. Ct. No. DK17503B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RIGOBERTO S., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent, Los Angeles County Department of Children and Family Services.

* * * * * *

In these consolidated juvenile dependency appeals, Rigoberto S. (father) appeals the juvenile court's denial of his 2019 motion to vacate its 2016 dispositional order as well as the court's order terminating his parental rights over his now-10-year-old daughter, Genesis S. We conclude that father's challenges on appeal lack merit, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

In November 2009, father and Lilian A. (mother) had Genesis. During the first few years of Genesis's life, father engaged in domestic violence with mother. In 2011, he was arrested and subsequently deported. Father returned to the United States in 2011, and moved to New York in 2012.

In May 2016, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Genesis and her half siblings (then, nine-year-old Christopher and infant Mia) on the basis of (1) domestic violence between mother and Mia's father, (2) mother's physical abuse of Christopher, (3) mother's alcohol abuse, and (4) the parents' neglect of Mia's medical needs. The allegations did not accuse father of any misconduct.

At the initial hearing in the dependency case, the juvenile court declared father to be Genesis's "presumed father." Because mother and father had stopped their weekly calls between father and Genesis earlier that year, mother provided no contact

2

information for father beyond the fact he was somewhere in New York.

The juvenile court ordered the Department to conduct a due diligence search to locate father so that he could participate in the ongoing dependency proceedings involving Genesis. The Department conducted two such searches—the first in June 2016, and the second in October 2017. The June 2016 search turned up no leads; the October 2017 search turned up a few leads, which the Department pursued.

The juvenile court exerted dependency jurisdiction over all three children, removed them from the custody of mother and Mia's father, and ordered the Department to provide them reunification services. The court terminated those services in August 2017, and set the matter for a permanency planning hearing. The court continued the permanency planning hearing several times to assure that the Department had time to pursue the leads from its second, October 2017 due diligence search.

In 2018, father found mother on Facebook, learned of the pending dependency case, and contacted the Department on July 9, 2018. Father indicated that he was in New York and wanted custody of Genesis. At first, Genesis refused to talk with him because she was "afraid" and "scared" of him because he "used to" yell at and "hit [her] mom," including in ways that made mother bleed. Although Genesis eventually agreed to participate in monitored telephone calls with father and father came to California to see her in person, all contact stopped on December 4, 2019, after father—during that in-person visit—"became agitated" with, used an "elevated" "tone of voice" with, "publicly" yelled at, and used his "mean voice" with Genesis's foster mother when she would not let father drive with Genesis alone to the

3

location of the monitored visit.  The foster mother corroborated Genesis's account; father denied it.  Prior to that incident, father had told Genesis that he would be taking her "away" to New York and that he would hurt her half brother Christopher if she told anyone.

Two weeks later, father filed a petition under Welfare and Institutions Code section 388[1] to vacate the July 2016 dispositional order denying him reunification services due to his unknown whereabouts because the Department's efforts to locate him were unreasonable and hence violated due process.

At a December 2019 hearing, the juvenile court found that the Department "did use reasonable efforts" to find father and denied his petition.  The court acknowledged that the Department "probably should have checked Homeland Security" "given that . . . father previously had been deported," but concluded that the Department's overall efforts were reasonable.  The court then ordered the Department to evaluate the possibility of visitation and of placing Genesis with father, and continued the permanency planning hearing until March 2020.  The Department in January 2020 reached out to its parallel agency in New York to assess father's living situation and provided that agency with all necessary information, but the agency did not respond despite the Department's several follow-up attempts.

The court conducted a permanency planning hearing in March 2020.  By that time, Genesis had been living with her foster parents and her half sister Mia since April 2018; Genesis and her foster parents had a "strong bond."  The court noted

---

[1]	All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

Genesis's desire to be adopted by her foster parents as well as her fear of father. The court made the following findings: "The court finds by clear and convincing evidence that this child is adoptable. The court finds it would be detrimental for the child to be returned to the physical custody of the parents and the court finds that no exception to adoption applies." Father did not object to the sufficiency of these findings. The court then terminated father's and mother's parental rights over Genesis.

Father filed separate appeals from the denial of his 388 petition and the order terminating his parental rights. On our own motion, we consolidated those appeals.

## DISCUSSION

### I. Denial of Section 388 Petition

#### A. *Pertinent facts*

The Department asked mother several times for father's contact information—at the initial detention hearing, prior to the jurisdictional hearing, and following the termination of reunification services. Each time, she said she no longer had his contact information, but that he was in New York when they lost contact in 2016.

Within weeks of filing its petition asking the juvenile court to exert dependency jurisdiction over Genesis, the Department conducted its first search for father. Using the search parameters of father's name and date of birth, the Department searched 20 different databases, including the branches of the military, the California and federal prison systems, the California welfare database, the California Department of Motor Vehicles (database), the child support database, the Postal Service, a voter registration database, the AnyWho telephone Directory, and a nationwide database of publicly available information searchable

5

by name and date of birth (known as the CLEAR database).[2] The Department did not search the Department of Motor Vehicles database for New York, but New York does not grant other states access to that database. The Postal Service search revealed an address that came back to a state welfare agency and a phone number that the Department repeatedly called, but which yielded no answer. The CLEAR database had "no information" beyond "a possible photo." At the time these database searches were conducted, father was living on 92nd Street in the Jackson Heights neighborhood of New York.

The Department's second search for father was similar to its first. Using the search parameters of father's name, his date of birth and "Last Known Address: Unknown; New York," the Department searched the same 20 databases, plus the New York and Florida prison systems. This time, however, the CLEAR database found 13 AKAs (also known as), two Social Security numbers, six telephone numbers, and three possible addresses— namely, (1) the 92nd Street/Jackson Heights address (reported as father's address from July 2015 to February 2017), (2) an 88th Street address in the East Elmhurst neighborhood of New York (reported as his address from February 2017 to April 2017), and (3) an address in Miami, Florida (reported as his address from January 2014 to October 2015). The Department submitted Postmaster inquiries for all three addresses.

---

[2] Both parties point us to *State v. Lebrick* (Conn. App. Ct. 2018) 179 Conn.App. 221, 232, reversed on other grounds in *State v. Lebrick* (Conn. 2020) 334 Conn. 492, which briefly discusses the CLEAR database.

6

**B.** *Analysis*

Father argues that the trial court erred in denying his 388 petition to vacate the court's July 2016 dispositional order on the grounds the Department's efforts to find him *prior to that July 2016* order were not reasonable. We review the denial of a 388 petition for an abuse of discretion. (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

As pertinent to this appeal, section 388 empowers a "parent" to petition the juvenile court "to change, modify, or set aside" any of its previous orders. (§ 388, subd. (a)(1).) Before a juvenile court may grant such a petition, the parent must establish (1) the existence of "new evidence" or a "change of circumstance," and (2) that altering the court's previous order is in the best interest of the child. (§ 388, subd. (a); *In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.) Because "[p]arents have a fundamental and compelling interest in the companionship, care, custody, and management of their children" (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106), the "state," before depriving a parent of this interest, must afford him due process—that is, "adequate notice and an opportunity to be heard" (*In re B.G.* (1974) 11 Cal.3d 679, 688-689; *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 483-488 (*Ansley*)). Evidence that a parent did not receive constitutionally adequate notice constitutes "new evidence" that may qualify him for relief under section 388. (*Ansley*, at pp. 481, 487-488; *In re Justice P.* (2004) 123 Cal.App.4th 181, 189 (*Justice P.*).)

As a general matter, notice is constitutionally adequate if it is "'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them

7

an opportunity to present their objections.'" (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418, quoting *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314). Where, as here, "the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the [missing] parent." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 (*Claudia S.*).) Due diligence "'denotes a thorough, systematic investigation and inquiry conducted in good faith.'" (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 (*David B.*); *In re Antonio F.* (1978) 78 Cal.App.3d 440, 450 ["'mere gesture'" at tracking down parent insufficient].) Due diligence requires "a reasonable search effort"—not a Herculean one. (*Claudia S.*, at p. 247; *Justice P.*, *supra*, 123 Cal.App.4th at p. 191.) A search effort is reasonable if it is the type of effort that a person "desirous of actually informing the [parent], might reasonably adopt to accomplish it" (*Claudia S.*, at p. 247); a search effort is not reasonable if it "'ignores the most likely means of finding the [parent].'" (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598-599, quoting *David B.*, at p. 1016.) What matters is whether what the Department did was reasonable, not whether its search might have been done differently. (See *People v. Diaz* (2002) 95 Cal.App.4th 695, 706.)

The juvenile court did not abuse its discretion in finding that the Department's efforts to find father prior to the July 2016 dispositional hearing were reasonable. By that time, the Department had twice asked mother for his contact information and had conducted a search for him in 20 different databases, and followed up on the one address and phone number that came up. These efforts were reasonable.

Father mounts what boils down to two challenges to the trial court's finding.

8

First, he argues that the Department's searches of the CLEAR and California DMV databases were deficient and hence unreasonable. With regard to the CLEAR database, father asserts that the Department must have done something wrong with its *first* database search because its *second* database search (16 months later) turned up his 92nd Street/Jackson Heights address and cell phone number. The necessary premise of father's assertion, of course, is that his 92nd Street/Jackson Heights address and his cell phone number were in the database in July 2016 rather than added at some point after July 2016 and before October 2017. But he provides nothing to support this premise. Indeed, the key elements of the Department's search parameters—father's name and date of birth—were the same for both searches. With regard to the California DMV database, father asserts that the Department must have done something wrong with its search because that search did not turn up the DMV "ID card" he was issued back in 2012. The necessary premise of this assertion is, again, that his ID card was in the database at the time. Further, he provides no evidence that his California DMV ID card would have contained the out-of-state address where he was residing four years later.

Second, father contends that the Department knew father had been deported and thus should have checked the federal immigration databases. Its failure to do so, he continues, impermissibly ignored the most likely means of finding him. (*David B.*, *supra*, 21 Cal.App.4th at p. 1016.) The juvenile court also noted that the Department "probably should have checked Homeland Security." Although the Department probably should have taken this step, it is not "the most likely means" of finding father given that he was deported five years earlier and had first

9

returned to California, before relocating to New York. Thus, the court did not abuse its discretion in determining that the Department's failure to search the immigration database did not render unreasonable its otherwise reasonable efforts to locate father by searching 20 other databases.

In light of the sufficiency of the juvenile court's findings regarding the reasonableness of the Department's efforts, we have no occasion to reach father's further challenge to the court's comment that father knew about the case back in 2016, whether vacating the dispositional order in December 2019 would have been in Genesis's best interests (see *Justice P.*, *supra*, 123 Cal.App.4th at p. 190 [requiring this showing, notwithstanding that *Ansley*, *supra*, 185 Cal.App.3d at pp. 490-491 had dispensed with it in this context]), or whether father's 17-month delay in filing his 388 petition bars such relief.

## II. Termination of Father's Parental Rights

Natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]." (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.) Consequently, due process guarantees that the state may not terminate a parent's rights with respect to his child without first (1) making a showing of parental unfitness—that is, a showing that placing the child with that parent would be detrimental to the child, and (2) doing so by clear and convincing evidence. (*Id.* at pp. 747-748, 758, 760, fn. 10; *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1130; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 224.) Where, as here, the parent at issue is non-offending and there has been no prior finding of detriment by the juvenile court, the court must make

10

the requisite detriment finding at the permanency planning hearing. (*In re Z.K.* (2011) 201 Cal.App.4th 51, 65-66.)

Father argues that (1) the juvenile court failed to make a finding of detriment at the permanency planning hearing and, alternatively, (2) any finding of detriment is not supported by substantial evidence.

### A.    *Finding of detriment*

Contrary to what father urges, the juvenile court made a finding of detriment at the permanency planning hearing when it stated: "The court finds it would be detrimental for the child to be returned to the physical custody of the parents and the court finds that no exception to adoption applies."

Father offers three reasons why this finding is insufficient.

First, he argues that the finding was not made by clear and convincing evidence. We reject this argument. Where, as here, the standard of proof is "well settled," appellate courts "presume[] that [the] trial court applied the proper standard of proof." (*In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625; *In re Katrina C.* (1988) 201 Cal.App.3d 540, 547; Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) Applying this presumption is particularly appropriate here, where the likely reason the juvenile court did not recite the words "by clear and convincing evidence" as part of its finding is because it had just stated those words, seconds before, when finding that Genesis was adoptable.

Second, father contends that a careful parsing of the court's finding suggests that it does not apply to him because he never had physical custody of Genesis, so a finding that "it would be detrimental for [her] to be *returned* to [his] *physical* custody" must be referring solely to mother. We reject this contention. To

11

begin, the court's finding referred to "the *parents*"—plural. Further, the question of detriment turns on whether placement—that is, physical custody—would be detrimental to the child. Although the word "return" could be read to suggest a return to somewhere Genesis had been before, we decline to give this word choice dispositive weight in light of the court's otherwise unambiguous reference to both "parents" and in light of the lack of any need for a detriment finding as to mother (from whom Genesis had been removed on the grounds of detriment). Indeed, reading the finding as referring solely to mother would render it entirely a duplicative and unnecessary "idle act." (*Covarrubias v. James* (1971) 21 Cal.App.3d 129, 135 [courts generally do not perform "idle act[s]"].)

Lastly, father asserts that the juvenile court ordered the Department to investigate whether it was suitable for father to take custody of Genesis but did not wait for the Department's investigation to be completed. Father continues that, without that investigation, the court's finding of detriment is speculative. This argument seems directed more at lack of substantial evidence to support the detriment finding; it does not negate the existence of the finding.

Because we conclude that the juvenile court made the required finding, the authority father cites regarding the consequences of *not* making a finding are irrelevant. (E.g., *In re T.G.* (2013) 215 Cal.App.4th 1, 16-23; *In re Gladys L.* (2006) 141 Cal.App.4th 845, 848-849; *In re Frank R.* (2011) 192 Cal.App.4th 532, 538-539; *In re Z.K., supra*, 201 Cal.App.4th at pp. 67-69; *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1211-1215.) We accordingly turn to father's argument that the finding is not supported by substantial evidence.

**B.** *Substantial evidence in support of the finding of detriment*

A finding of detriment must be supported by substantial evidence. (*In re A.J.* (2015) 239 Cal.App.4th 154, 160.) "In conducting substantial evidence review, we review the evidence in the light most favorable to the juvenile court's finding[], and draw all inferences and resolve all evidentiary doubts in favor of those findings." (*In re D.M.* (2015) 242 Cal.App.4th 634, 640.) We undertake this review through the prism of clear and convincing evidence as set forth by our Supreme Court. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; *In re V.L.* (Sept. 1, 2020, B304209) __ Cal.App.5th __, 2020 Cal.App.LEXIS 833, *12-*13.)

Substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that placing Genesis with father would be detrimental to Genesis. On the one hand, both mother and Genesis stated that father used to yell and hit mother in front of Genesis. Although this domestic abuse happened back in 2011 or 2012, Genesis and her foster mother reported that father "became agitated" and starting yelling at foster mother during a visitation in December 2019. In that same time frame, father had threatened to harm Genesis's half sibling if she did not keep secret his plans to take her to New York. The danger flowing from a parent who evinces a continued willingness to engage in domestic abuse constitutes substantial evidence of detriment. (E.g., *In re F.S.* (2016) 243 Cal.App.4th 799, 813 [so noting], overruled on another point as stated in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7; cf. *In re C.M.* (2014) 232 Cal.App.4th 1394, 1403-1404 (*C.M.*) [no detriment where domestic violence was in the past and there was "no evidence of any recent, much less current, domestic

13

violence"].)  This conduct by father—and Genesis's fear of him that flows from it—was why Genesis initially refused to talk with father and why, after giving telephonic visits and an in-person visit a try, she refused all further meetings with him.  Although father denies this conduct and complains on appeal that he was not given the opportunity to rebut this evidence, he did not object to the court's consideration of any of this evidence at the time and we must resolve all evidentiary conflicts in favor of the juvenile court's finding.  On the other hand, Genesis had a strong bond with her foster mother and younger sister Mia, with whom she had been living for nearly two years by the time of the permanency planning hearing.  The emotional harm Genesis would suffer by severing that bond and moving Genesis across the continent to New York further contributes to the substantiality of the evidence of detriment.  (E.g., *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426-1427 [so noting].)

Father makes three arguments in response.

First, father cites cases noting that a finding of detriment cannot be based solely on a parent's absence from a child's life or on a child's wishes not to reside with the parent.  (E.g., *In re John M.* (2006) 141 Cal.App.4th 1564, 1570-1571; *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1263-1264; *C.M.*, *supra*, 232 Cal.App.4th at p. 1403.)  In this case, however, the finding of detriment rests on far more than father's absence and Genesis's wishes.

Second, father argues that the juvenile court's unwillingness to wait for the Department's investigation into the suitability of his home impermissibly shifted the burden *to him* to prove his fitness.  The court asked the Department to acquire additional information, the Department's efforts were rebuffed by

14

the New York authorities, and the court decided it had sufficient information to proceed even without this additional information. This did not shift the burden and does not otherwise call into question the substantiality of the evidence underlying the court's detriment finding.

Lastly, father asserts that placing Genesis with him would not be a detriment to her because he has a good job, was persistent in his efforts to have calls with Genesis, and would be willing to work past his relationship with the foster mother through conjoint counseling. What is more, father argues, Genesis is developmentally on track and thus more resilient. At bottom, father is asking us to give greater weight to the evidence counseling against a finding of detriment. When we engage in substantial evidence review, this is beyond our purview.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST



_____, J.
CHAVEZ

15